**JENNER & BLOCK LLP**
David R. Singer (SBN 204699)
dsinger@jenner.com
Julie A. Shepard (SBN 175538)
jshepard@jenner.com
Lauren M. Greene (SBN 271397)
lgreene@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:  (213) 239-5100
Facsimile:   (213) 239-5199

*Attorneys for Plaintiffs*

*Additional counsel on signature page*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISNEY ENTERPRISES, INC.; UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP; WARNER BROS. ENTERTAINMENT INC., et al.,<br><br>                          Plaintiffs,<br><br>      v.<br><br>MINIMAX, et al.,<br><br>                          Defendants. | Case No. 2:25-cv-08768-SB-E<br><br>Hon. Judge Stanley Blumenfeld, Jr.<br><br>**JOINT RULE 26(f) REPORT**<br><br>**[LOCAL RULE 26-1]**<br><br><u>Scheduling Conference</u><br><br>Date:       May 1, 2026<br>Time:      8:30 a.m.<br>Ctrm:     6C<br><br>Original Complaint: September 16, 2025<br>Responsive Pleading: April 10, 2026<br>Trial (Proposed): October 25, 2027 |

1

JOINT RULE 26(f) REPORT

Pursuant to the Court's March 5, 2026 Mandatory Scheduling Conference (MSC) Order (Dkt. No. 30) (the "Scheduling Conference Order"), counsel for Plaintiffs Disney Enterprises, Inc., Universal City Studios Productions LLLP, Warner Bros. Entertainment Inc., Marvel Characters, Inc., MVL Film Finance LLC, Lucasfilm Ltd. LLC, Twentieth Century Fox Film Corporation, DC Comics, The Cartoon Network, Inc., Turner Entertainment Co., Hanna-Barbera Productions, Inc., and DreamWorks Animation L.L.C. (collectively, "Plaintiffs") and Defendants MiniMax, Shanghai Xiyu Jizhi Technology Co. Ltd., and Nanonoble Pte. Ltd. (collectively, "MiniMax" or "Defendants" and together with Plaintiffs, the "Parties") met and conferred on April 10, 2026 regarding the matters required by Federal Rule of Civil Procedure ("FRCP") 26(f), C.D. Cal. Local Rule 26-1, and this Court's Order.  The Parties now report to the Court on the following matters:

**ISSUES IN THE COURT'S SCHEDULING CONFERENCE ORDER**

1.    Subject Matter Jurisdiction.  This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. § 501(b).

2.    Statement of the Case.

Plaintiffs' Statement: Plaintiffs filed this lawsuit to put an end to Defendants' systematic and willful infringement of their copyrighted works and characters and to recover statutory damages, disgorgement of profits, and other remedies allowed under the Copyright Act.[1]  Plaintiffs are three of the largest movie and television studios and entertainment companies in the world.  Over the last century, Plaintiffs have driven American creativity and created enormous economic value through their investment in storytelling through their iconic and larger-than-life, characters. Plaintiffs have developed some of the most recognizable characters of all time, including Darth Vader, the Minions from *Despicable Me*, and Batman.

---

[1] Capitalized terms not defined herein shall have the same meaning as in the Complaint.

JOINT RULE 26(f) REPORT

Defendants develop, operate, sell, and promote a commercial subscription service in the United States called Hailuo AI that is powered by an artificial intelligence ("AI") model, that generates, reproduces, publicly displays, publicly performs, and makes available for download image and video outputs that feature Plaintiffs' distinctive and famous copyrighted characters – without Plaintiffs' authorization or consent and over Plaintiffs' repeated objections.  Defendants' infringement is brazen, as demonstrated in the Complaint, Defendants helped themselves to Plaintiffs' copyrighted characters to market its Service and attract Subscribers in the United States calling Hailuo AI a "Hollywood studio in your pocket."

Defendants have engaged in rampant, direct copyright infringement in violation of the US Copyright Act through its Hailuo AI on multiple levels. Defendants infringed Plaintiffs' Copyrighted Works in purposely creating, training, operating, marketing and making commercially available their Hailuo AI service which has generated, distributed, publicly displayed, and publicly performed copies and derivatives of Plaintiffs' Copyrighted Works.  Hailuo AI has already generated countless copies and derivatives of Plaintiffs' Copyrighted Works.  To the extent Defendants seek to evade responsibility for reproducing, distributing, publicly displaying, and publicly performing Plaintiffs' Copyrighted Works without authorization by blaming their subscribers for their own conduct, Defendants are liable anyways as a secondary infringer under the doctrines of vicarious liability and inducement.

Defendants' Statement: Through years of effort, Defendant Nanonoble, alongside its sister entities within the MiniMax Group, has developed some of the most advanced AI products in the market, with over 200 million active users around the globe.  These products include MiniMax, Hailuo AI, Talkie/Xingye, and a platform that provides enterprise customers API access to the underlying AI models for video, speech, and music generation.

JOINT RULE 26(f) REPORT

Plaintiffs have targeted the Hailuo AI tool, which enables users to create 6-to-10 second video clips based on a text or image prompt. Hailuo AI is a general-purpose creative tool with vast noninfringing uses. Users create clips for social media, advertisements for their businesses, and visual effects shots for short films.

Plaintiffs do not allege that any Hailuo AI output reproduces the plot, dialogue, settings, or sequences of any motion picture or television program in which they hold a registered copyright. Instead, Plaintiffs claim to own copyrights in dozens of characters and allege that Hailuo AI infringed those copyrights. But Plaintiffs have not identified valid copyright registrations for any of those characters. They instead appear to rely on registrations for audiovisual works—films and television episodes—in which the characters appear. The vast majority of those registrations cover derivative works such as sequels or spin-offs, and many expressly exclude pre-existing materials (which would include the same characters at issue in the Complaint that appeared in earlier audio-visual works). Plaintiffs have also not established chain of title for legacy works spanning multiple corporate acquisitions or compliance with pre-1976 Act formalities such as notice and renewal. Plaintiffs also fail to plead facts showing that each character satisfies the Ninth Circuit's tests for the copyrightability of characters. Because the Complaint does not establish that the asserted characters are copyrightable or copyrighted, every infringement claim fails at the threshold.

Should they survive these copyrightability issues, Plaintiffs' claims for direct copyright infringement lack merit on several independent grounds. Defendants developed and trained Hailuo AI in Asia, beyond the territorial reach of the Copyright Act, and Cloudflare caching of user-generated outputs does not convert foreign training into domestic infringement. Plaintiffs' own counsel created 52 of the outputs underlying the Complaint using the Hailuo AI tool, and a copyright owner cannot infringe its own copyright—so those outputs cannot support Plaintiffs' claims. Users, not Nanonoble, created nearly all of the remaining outputs. Users

JOINT RULE 26(f) REPORT

selected the prompts, and automated preprocessing through the "Prompt Optimizer" does not constitute volitional selection of copyrighted content. Nanonoble lacks the direct, volitional conduct required for direct liability.

Training Hailuo AI on publicly available content is fair use under 17 U.S.C. § 107. Hailuo AI does not reproduce Plaintiffs' films or television programs. It learns visual concepts from billions of publicly available images to enable users to create new content—a fundamentally different purpose from the original entertainment works. Every state-of-the-art image and video AI model relies on the same training practices and the same publicly available data. Defendants are informed and believe that Plaintiffs' own employees, contractors, and creative partners may use generative AI tools built on these same practices in the course of their work. That conduct is a practical concession that AI models trained on publicly available content produce something new and useful—and strong evidence that the relevant industry considers such training to be fair use. Plaintiffs have identified no actual lost revenue, no lost licensing opportunity, and no cognizable market for AI training data that Hailuo AI has harmed. The brief, user-directed clips that Hailuo AI produces do not substitute for feature-length films or television programs. Any similarities between Hailuo AI outputs and Plaintiffs' characters are *de minimis* once the analysis filters out generic character types, *scènes à faire*, and unprotectable ideas.

Plaintiffs' secondary infringement claims fare no better. Plaintiffs cannot rely on the 52 self-created outputs as predicate acts of third-party direct infringement. Beyond those outputs, the Complaint identifies only nine third-party social media posts—a fraction of the approximately 8,000 total posts on Defendants' accounts. Even if Plaintiffs could show predicate third-party infringement, their vicarious liability theory fails because Nanonoble lacks the right and ability to police the millions of videos that users produce and because Hailuo AI charges a flat subscription fee regardless of output content—revenue not directly attributable to

JOINT RULE 26(f) REPORT

infringement.  Their contributory liability theory fails because Hailuo AI is capable of substantial noninfringing uses and Nanonoble does not encourage or induce users to infringe.

Defendants also intend to assert defenses based on acquiescence, estoppel, and waiver.  Plaintiffs knew about Hailuo AI and other generative AI services for an extended period before filing suit and took no steps to restrict access or invoke notice-and-takedown procedures.  Plaintiffs also used Hailuo AI to create the very outputs underlying the Complaint.  Defendants will raise unclean hands as well. Plaintiffs use and benefit from generative AI tools—including Hailuo AI itself— and, on information and belief, are training their own AI models on third-party copyrighted works.  To the extent Plaintiffs' employees, contractors, or creative partners used Hailuo AI with authorization, those uses may constitute a license barring some or all of Plaintiffs' claims.

As to the remaining two Defendants, MiniMax and SXJT, this Court lacks jurisdiction over either entity.  No company named "MiniMax" exists within the MiniMax Group, and SXJT is a Chinese research and development firm that is a sister subsidiary to Nanonoble.  Unlike Nanonoble, SXJT has nothing to do with the sale, distribution, or operation of Hailuo AI in the United States and lacks the contacts required for this Court to exercise jurisdiction over it.  Defendants' Rule 12(b)(2) motion to dismiss addresses these issues.  Dkt. No. 34.

3.    <u>Damages/Insurance</u>.

a.  Damages.

<u>Plaintiffs' Response</u>: Plaintiffs will need to conduct discovery to understand the number of works that Defendants have infringed in order to calculate potential statutory damages under 17 U.S.C. § 504(c).  Plaintiffs will also need discovery from Defendants regarding the amount of money they have earned from their unlawful copyright infringement to calculate disgorgement damages under 17 U.S.C. §

JOINT RULE 26(f) REPORT

504(b). Plaintiffs reserve all rights to seek all available damages under the Copyright Act.

Defendants' Response: Defendants deny that Plaintiffs are entitled to any relief whatsoever.  Defendants do not seek relief at this time other than attorneys' fees and costs if they prevail.

   b. Insurance.

Plaintiffs' Response: Not applicable to Plaintiffs.

Defendants' Response: Defendants are aware of no insurance policies that may cover this action.

4.   Parties, Evidence, Etc.

Parties: Plaintiffs are Disney Enterprises, Inc., Universal City Studios Productions LLLP, Warner Bros. Entertainment Inc., Marvel Characters, Inc., MVL Film Finance LLC, Lucasfilm Ltd. LLC, Twentieth Century Fox Film Corporation, DC Comics, The Cartoon Network, Inc., Turner Entertainment Co., Hanna-Barbera Productions, Inc., and DreamWorks Animation L.L.C.

Defendants are MiniMax,[2] Shanghai Xiyu Jizhi Technology Co. Ltd., and Nanonoble Pte. Ltd.

Plaintiffs' Corporate Parties: Plaintiffs attach Exhibits A, B, and C, which identify Plaintiffs' subsidiaries, parents, and affiliates.

Defendants' Corporate Parties: Defendants identify the following parents, subsidiaries, and affiliates:

- MiniMax Group Inc. – parent of SXJT; parent of Nanonoble
- Beijing Xiyu Jizhi Technology Co., Ltd. – affiliate of SXJT; affiliate of Nanonoble
- SUBSUP Pte. Ltd. – affiliate of SXJT; affiliate of Nanonoble

---

[2] Based on representations from defendant Shanghai Xiyu Jizhi Technology Co. Ltd. that MiniMax is not a separate entity, Plaintiffs intend to dismiss defendant MiniMax without prejudice.

- Shanghai Xiyu Technology Co., Ltd. – affiliate of SXJT; affiliate of Nanonoble

- MiniMax HongKong Tech Limited – affiliate of SXJT; affiliate of Nanonoble

Plaintiffs' Percipient Witnesses: Aside from the countless subscribers of Defendants' Hailuo AI to whom Midjourney has distributed, publicly displayed, and publicly performed infringing copies and derivative works featuring Plaintiffs' copyrighted characters, Plaintiffs are aware of the following percipient witnesses: Plaintiffs' employees familiar with their copyrighted works, Plaintiffs' employees familiar with actual and/or threatened harm, and Bruce Ward, who has collected evidence relating to infringing outputs generated by Hailuo AI that Plaintiffs are relying on in this action.  Plaintiffs anticipate that additional witnesses will be identified through discovery.

Defendants' Percipient Witnesses: Percipient witnesses include certain employees of Defendants connected to the research, training, development, sale, and marketing of the Hailuo AI tool.  Defendants anticipate that additional witnesses, including employees or former employees of Plaintiffs and their affiliates with knowledge of Plaintiffs' use of the Hailuo AI tool and other generative AI products, will be identified through discovery.

Plaintiffs' Documents:
- The pleadings in this action;
- The news articles and publications referenced therein;
- The correspondence between the Parties relating to this action;
- Plaintiffs' copyright registrations;
- Plaintiffs' copyrighted works at issue;
- Image and video outputs from Hailuo AI that Plaintiffs intend to rely on as evidence Defendants' infringement of Plaintiffs' copyrighted works at issue in this lawsuit;

8

JOINT RULE 26(f) REPORT

- Defendants' source code, training data, and records of subscriber prompts and outputs generated by Hailuo AI;
- Defendants' promotional and marketing material that uses Plaintiffs' Copyrighted Works;
- Documents that Plaintiffs intend to rely on in this action showing that the availability of outputs that infringe Plaintiffs' copyrighted works on the Hailuo AI service is a draw to users and consumers;
- Documents demonstrating Defendants being on notice of its service being used to generate outputs infringing on Plaintiffs' copyrighted works;
- Plaintiffs' policies regarding the use of image and video generative artificial intelligence services;
- Documents reflecting harm caused by, or threatened to be caused by, Defendants' copyright infringement; and
- Plaintiffs also will rely on documents produced in response to discovery requests in this matter and witnesses identified in the course of discovery. Plaintiffs may also rely on any document or witness produced or disclosed by Plaintiffs or other Parties through initial disclosures, discovery, or in connection with motions filed in this action. Plaintiffs also reserve the right to rely on materials relied on by any disclosed expert witness in this action.

Defendants' Documents:

- The pleadings and filings in this action;
- Defendants' pending motions to dismiss (Dkt. Nos. 34, 35) and all supporting materials;
- Documents relating to the development, training, and operation of the Hailuo AI tool;
- Documents relating to Plaintiffs' copyright registrations, ownership, chain of title, and scope of rights in each asserted work and character, including compliance with pre-1976 Act formalities;

JOINT RULE 26(f) REPORT

- Documents relating to the 52 outputs identified in the Complaint, including Jenner & Block user accounts, all prompts submitted, all outputs received, and internal communications about the decision to create them;

- Documents relating to Plaintiffs' use of Hailuo AI and other generative AI tools by employees, contractors, licensees, and visual effects partners;

- Documents relating to Plaintiffs' development, training, or fine-tuning of any generative AI models and any use of publicly available or third-party copyrighted content in that training;

- Documents relating to Plaintiffs' use of web crawlers, scrapers, or automated tools to get multimedia content they do not own or license;

- Documents relating to Plaintiffs' alleged harm, including actual lost revenue, lost licensing opportunities, or market displacement attributable to Hailuo AI specifically;

- Documents relating to licensing history and valuations for the asserted works and characters; and

- Documents produced in response to discovery requests in this matter and witnesses identified in the course of discovery, and materials relied on by any disclosed expert witness in this action.

5. Discovery:

a. Status of Discovery: Plaintiffs served their first set of requests for production on April 15, 2026 and plan to serve their first set of interrogatories and requests for admission promptly. Defendants plan to serve their first sets of discovery promptly. The Parties have agreed to exchange Initial Disclosures on April 24, 2026.

b. Discovery Plan: Pursuant to FRCP 26(f)(3)(B) and the Scheduling Conference Order, the Parties have conferred regarding the subjects on which discovery may be needed. The Parties have conferred and plan to conduct discovery as follows:

JOINT RULE 26(f) REPORT

i.      Discovery by Plaintiffs: Plaintiffs anticipate that the discovery they conduct will include the following subjects: (1) Defendants' infringement of Plaintiffs' Copyrighted Works including copies made by Defendants in conjunction with the training of Hailuo AI, including during processes known as pre-training, post-training and fine-tuning, as well as Hailuo AI's infringing outputs, (2) the development and operation of Hailuo AI including training data, source code, and prompt and output records relevant to Plaintiffs' copyright infringement claims, (3) the acquisition and/or librarying of training data/images/videos for Hailuo AI, including scraping, the acquisition of pirated content in connection with the development of Hailuo AI, and licensing deals and negotiations for training data, (4) Defendants' business plans, including service features under development and projections for use of Hailuo AI's service and features, (5) Hailuo AI's features, including image and video outputs and the Explore features on the Hailuo AI website, (6) Defendants' use Plaintiffs' Copyrighted Works to advertise and promote Hailuo AI, (7) Defendants' organizational structure, including the relationship between each defendant and each defendant's involvement in Hailuo AI and the infringement at issue, (8) Defendants' partnerships and licensing arrangements, (9) Defendants' analysis, development, and implementation of copyright protection measures, (10) Defendants' subscriber terms and conditions, including changes thereto, (11) Defendants' enforcement of its terms and conditions, including restricting or terminating subscriber accounts, (12) Defendants' knowledge that Hailuo AI massively infringes copyrights and notice of other claims of infringement asserted against Defendants, and (13) Defendants' revenues, profits and expenses attributable to its infringement of Plaintiffs' Copyrighted Works.

ii.      Discovery by Defendants: Defendants anticipate seeking discovery on: (1) ownership, registration, chain of title, and scope of rights in each asserted work and character, including compliance with pre-1976 Act formalities;

JOINT RULE 26(f) REPORT

(2) Plaintiffs' use of Hailuo AI and other generative AI tools by employees, contractors, licensees, and visual effects partners; (3) Plaintiffs' development, training, or fine-tuning of any generative AI models, and any use of publicly available or third-party copyrighted content in that training; (4) the 52 outputs, including Jenner & Block accounts, prompts, outputs, internal strategy discussions, and prior testing of Hailuo AI; (5) Plaintiffs' use of generative AI models and each Plaintiff's development of any technology that uses third-party literary or visual content as an input, including any agreements or transactions with third parties about the use of their copyrighted content to train or facilitate the output of AI models or AI technologies; (6) Plaintiffs' use of web crawlers, scrapers, or automated tools to get multimedia content they do not own or license; (7) alleged damages or harm, including actual lost revenue, lost licensing opportunities, or market displacement attributable to Hailuo AI specifically, as distinct from generative AI generally; and (8) licensing history and valuations for the asserted works and characters for comparable uses, including in the training-data context and licensing agreements or negotiations between Plaintiffs and other generative AI providers, as well as Plaintiffs' policies about fan fiction and non-enforcement of alleged infringement.

iii.    ESI: Pursuant to FRCP 26(f)(3)(C) and the Scheduling Conference Order, the Parties have discussed disclosure and discovery of electronically stored information and have agreed to work together to develop an efficient plan for the exchange of electronically stored information.

iv.    Privilege Issues: Pursuant to FRCP 26(f)(3)(D) and the Scheduling Conference Order, the Parties have conferred and state as follows:

Plaintiffs' Position:  Defendants' motion to dismiss states that Defendants have "confirmed that user accounts tied to employees at Jenner & Block LLP (the Studios' counsel) submitted the prompts identified in Paragraphs 118 through 160" of the Complaint.  Dkt. No. 35 at 12:9-11.  This statement raises serious concerns over whether Defendants are accessing and reviewing Plaintiffs' work product

testing of their infringing Hailuo AI service.  *See Tremblay v. OpenAI, Inc.*, 2024 WL 3748003, at *2–3 (N.D. Cal. Aug. 8, 2024) (prompts submitted to test service in preparing complaint were opinion work product).  Defendants' argument that Plaintiffs' disclosure of Bruce Ward, an investigator, defeats the work product protection is misplaced.  The work product doctrine applies to documents prepared by a party's "attorney, consultant, surety, indemnitor, insurer, or agent." *Id*.; *see In re Grand Jury Subpoena* (*Mark Torf/Torf Environmental Mgmt.*) (9th Cir. 2004) 357 F.3d 900, 909-910 (documents created by investigator working for attorney were protected from discovery under Rule 26(b)(3)).

Plaintiffs object to Defendants' review or monitoring of any Hailuo AI accounts associated with Plaintiffs' counsel during this litigation and are prepared to brief the issue more fully if that would be helpful for the Court.

Defendants' Position: Plaintiffs' objection is unfounded.  Plaintiffs' counsel chose to register accounts on Defendants' own commercial platform and submit prompts directly to Defendants' servers.  Defendants identified those accounts by reviewing their own business records while investigating the Complaint's allegations.  The work product doctrine protects litigation materials from compelled disclosure in discovery.  It does not require a party to disregard its own business records because opposing counsel chose to use that party's commercial platform.  Plaintiffs had no reasonable expectation that information submitted to Defendants' service would be shielded from Defendants.

Plaintiffs' reliance on *Tremblay v. OpenAI, Inc.*, 2024 WL 3748003 (N.D. Cal. Aug. 8, 2024), is misplaced.  *Tremblay* involved a defendant seeking to compel production of prompts through discovery.  The court protected negative testing results as opinion work product but still required disclosure of prompts and outputs used in the complaint.  *Id*. at *2–3.  Here, Defendants did not compel anything— they reviewed their own platform data.  *Tremblay* does not address that situation. And even under *Tremblay*, the 52 outputs in the Complaint are discoverable.

JOINT RULE 26(f) REPORT

Plaintiffs disclosed the full text of the prompts and images of the resulting outputs in Paragraphs 118 through 160 of the Complaint, waiving any work product protection over those materials. *Tremblay*, 2024 WL 3748003, at *3 (requiring disclosure of positive testing results used in the operative complaint).

Moreover, prompts and outputs beyond the 52 disclosed in the Complaint are not protected. *First*, all prompts reside on Defendants' own servers—Defendants seek to access data already in their possession, not to compel production of materials from Plaintiffs' files. *Second*, to the extent these prompts qualify as work product at all, they are fact work product at most; simple text strings consisting of character names and brief descriptions (e.g., "Yoda with lightsaber, IMAX") do not reflect attorney mental impressions, conclusions, or legal theories. *SEC v. Pulier*, 2020 WL 8102053, at *3 (C.D. Cal. Nov. 13, 2020). *Third*, Plaintiffs selectively disclosed 52 favorable outputs in their Complaint while withholding the full universe of prompts and outputs on the same subject matter; fairness requires disclosure of the remainder so that Defendants can evaluate whether Plaintiffs cherry-picked results supporting their claims while concealing results that do not. Fed. R. Evid. 502(a); *Concord Music Grp., Inc. v. Anthropic PBC*, 2025 WL 3677935, at *3 (N.D. Cal. Dec. 18, 2025) (compelling production of negative prompts after plaintiffs "placed [the] topic and investigation at issue"). *Fourth*, Plaintiffs identified Bruce Ward as a percipient witness who "collected evidence relating to infringing outputs" on which Plaintiffs are "relying on in this action"; by putting Mr. Ward's investigation at issue, Plaintiffs cannot withhold the complete record of what he found, including prompts that did not yield outputs depicting Plaintiffs' characters. *Concord Music*, 2025 WL 3677935, at *3.

Defendants reserve all rights to seek discovery into the creation of the 52 outputs and all other testing of the Hailuo AI tool, including all prompts submitted, all outputs received, account settings, and internal communications about the decision to create them.

JOINT RULE 26(f) REPORT

v.    <u>Limitations on Discovery</u>: Pursuant to FRCP 26(f)(3)(E) and the Scheduling Conference Order, the Parties have conferred regarding the limitations on discovery provided for in the Federal Rules and state as follows:

*Jurisdictional Discovery*:

<u>Plaintiffs' Position</u>: Defendants filed a motion to dismiss raising the issue of personal jurisdiction.  As a result, Plaintiffs intend to issue interrogatories to Defendant SXJT that address personal jurisdiction.  It is Plaintiffs' position that those interrogatories should not count towards the limit to interrogatories in FRCP 33(a)(1).

<u>Defendants' Position</u>: The Court should not exempt any interrogatories directed to SXJT on personal jurisdiction from the FRCP 33(a)(1) limit.  Rule 33(a)(1) draws no distinction between jurisdictional and merits interrogatories—the limit applies to all topics.  Plaintiffs chose to sue SXJT in this forum and bear the burden of establishing jurisdiction; they should account for that burden within their allotted interrogatories, not around them.  Exempting an entire subject matter would invite limitless carve-outs and erode the cap that the Rules impose.

*Interrogatory Limits*: The Parties agree to the following modifications to the default interrogatory limits, subject to further adjustment by agreement or a showing of good cause:

- Plaintiffs' side: 25 common interrogatories, plus 5 additional interrogatories per studio group (Disney, Universal, Warner Bros. Discovery) specific to that group's asserted works.

- Defendants' side: 25 common interrogatories, plus 6 additional interrogatories directed to any of the three studio groups to address topics that differ across the groups.

15

JOINT RULE 26(f) REPORT

*Deposition Limits*:

Plaintiffs' Position: Plaintiffs are considering Defendants' proposal below, which Plaintiffs only recently received, and will be able to update the Court at the scheduling conference regarding their position.

Defendants' Position: Plaintiffs comprise 12 entities across three studio groups with separate corporate structures, works, and chains of title. The default limit of 10 depositions per side does not give Defendants adequate access to testimony across all three groups on topics such as ownership, registration, use of generative AI tools, creation of the 52 outputs, and alleged harm. Defendants propose to keep the limits equal at 10 party depositions and 5 third-party depositions per side, excluding expert depositions, provided that each Rule 30(b)(6) notice Defendants serve may be directed to a studio group—Disney, Universal, or Warner Bros. Discovery—and that group must designate a witness to testify on behalf of all entities within it. For example, a single notice directed to the Disney group would count as one deposition but would require a witness competent to testify for Disney Enterprises, Marvel Characters, MVL Film Finance, Lucasfilm, and Twentieth Century Fox Film Corporation. If Plaintiffs do not agree to this mechanism, then Defendants should receive 20 party depositions, Plaintiffs should receive 10 party depositions, and each side should receive 5 third-party depositions, excluding expert depositions.

vi.    Protective Order: Pursuant to FRCP 26(f)(3)(F) and the Scheduling Conference Order, the Parties have conferred and agree that a protective order will be necessary to protect proprietary and confidential financial information and/or competitively sensitive information, and they have agreed to work together to submit a mutually agreeable proposed order to the Court.

vii.    Discovery Plan and Expert Disclosures: Pursuant to FRCP 26(f)(2)-(3) and Local Rule 26.1, the Parties have conferred regarding deadlines as detailed in Section 11, below.

6.    Legal Issues:

Plaintiffs' Response. Plaintiffs' Complaint asserts claims for direct copyright infringement and, in the alternative, secondary copyright infringement.  Plaintiffs anticipate that the legal issues will include: (1) whether Defendants infringed Plaintiffs' copyrights when it trained Hailuo AI on Plaintiffs' content and generated, copied, distributed, publicly displayed and publicly performed video and image outputs generated by Hailuo AI with Plaintiffs' Copyrighted Works, (2) whether Defendants' infringement of Plaintiffs' copyrights has been willful, (3) whether Defendants can establish a fair use defense, (4) whether Defendants can shift responsibility for direct infringement to their subscribers for Defendants' infringing outputs based on its assertion that Defendants' subscribers are the ones engaged in direct copyright infringement, and (5) whether Defendants can skirt liability for infringement by arguing that some of its conduct occurred outside of the United States.

Defendants Response:  Defendants anticipate that legal issues will include: (1) the validity and scope of Plaintiffs' copyright ownership in the asserted characters and works; (2) whether the Copyright Act applies to Defendants' conduct that occurred outside the United States; (3) whether a copyright owner or its agents can create outputs that support infringement claims against Defendants; (4) whether Plaintiffs can establish the volitional conduct required for direct infringement; (5) whether Defendants' conduct constitutes fair use under 17 U.S.C. § 107; (6) whether any alleged similarities between Hailuo AI outputs and Plaintiffs' characters are *de minimis*; (7) whether Plaintiffs can establish secondary liability under theories of vicarious or contributory infringement; (8) whether the Hailuo AI tool is capable of substantial noninfringing uses; (9) whether Plaintiffs' claims are barred by acquiescence, estoppel, or waiver; (10) whether Plaintiffs' own use of generative AI tools constitutes unclean hands; and (11) whether Plaintiffs licensed

JOINT RULE 26(f) REPORT

their asserted works to Defendants through authorized use of Hailuo AI by their employees, contractors, or creative partners.

7.    Motions:

a.    Procedural Motions.

Plaintiffs' Position: Plaintiffs understand that this Court usually sets the deadline to amend pleadings and add parties as sixty (60) days after the Mandatory Scheduling Conference. Dkt. No. 30 at 1.d. However, Defendants have represented that the "MiniMax" defendant is not a separate company. MiniMax instead appears to be a fictitious business name for defendant SXJT. Apparently, there are other defendant-affiliated entities with the name "MiniMax" and Plaintiffs are working diligently to determine whether any of those entities is a proper defendant here. Plaintiffs may need to bring a motion to add parties based on the results of that discovery and investigation. Therefore, Plaintiffs request that the Court set the deadline to amend pleadings and add parties one hundred and twenty (120) days after the Mandatory Scheduling Conference.

Defendants' Position: The Court should set the amendment deadline at 60 days after the Mandatory Scheduling Conference. Plaintiffs have investigated this case since at least June 2025 and filed their Complaint on September 16, 2025. MiniMax Group Inc., Defendants' indirect parent company, is publicly listed on the Hong Kong Stock Exchange, and its corporate structure—including all subsidiaries—is disclosed in its public filings. Plaintiffs have had ample time and access to determine the proper defendants and do not need 120 more days to do so.

b.    Dispositive Motions. On April 10, 2026, Defendants filed a motion to dismiss for lack of personal jurisdiction as to defendants MiniMax and SXJT (Dkt. No. 34) and a motion to dismiss for failure to state a claim (Dkt. No. 35). The Parties may file motions for summary judgment based on information and evidence gathered in discovery.

c.    Class Certification Motion. Not applicable.

JOINT RULE 26(f) REPORT

8.    Alternative Dispute Resolution (ADR):

a.    Prior Discussions.  During the Rule 26(f) Conference of Counsel the Parties discussed the ADR Procedure specified in L.R. 16-15.4.

b.    ADR Selection.  The Parties are amenable to ADR Procedure No. 3, a private dispute resolution proceeding with a mediator jointly selected by the Parties.

9.    Trial.

a.    Proposed Trial Date.  October 25, 2027.  The Parties jointly propose October 25, 2027, approximately eighteen months after Defendants' initial due date for their responsive pleading due to the complex nature of this matter.  This case involves 12 Plaintiff entities across three studio groups asserting copyrights in dozens of characters that span decades of film and television production, each with a separate registration history, chain of title, and ownership path through multiple corporate acquisitions.  The case also raises novel legal questions about AI-generated content.  As set forth above, the Defendants have filed motions to dismiss which may result in the matter not being at issue for several months.  Additionally, while the Parties intend to conduct discovery diligently, Defendants are foreign entities and discovery may involve international witnesses and the need for translators.  The Parties anticipate that relevant documents may be in Chinese which will increase the time needed for both sides to review documents.  Plaintiffs anticipate that discovery may include source code as well as large amounts of training data which will require coordination between the Parties, possible discovery disputes, and sufficient time for proper review and analysis.  For these reasons, the Parties believe that a trial date eighteen months after the initial deadline for Defendants' responsive pleading is appropriate.

b.    Trial Estimate.  The Parties currently estimate that trial of this case will require eight to ten court days.  As discussed above, this is a complex matter due to the number of Plaintiff entities (12 across three studio groups), the volume of

JOINT RULE 26(f) REPORT

asserted works, volume of alleged infringement, the technology involved and the Parties' need for expert testimony. Additionally, the Parties anticipate that witnesses will require translators. Therefore, the Parties believe more than four days of trial will be necessary. Plaintiffs contemplate calling approximately twenty (20) witnesses. Defendants contemplate calling approximately 15 to 20 witnesses.

> c.    Jury of Court Trial. The trial will be a jury trial.

> d.    Magistrate Judge. The Parties do not agree to try the case before a magistrate judge.

> e.    Trial Counsel.

- Plaintiffs' Counsel. David Singer, Jenner & Block LLP, lead Trial Counsel; Julie A. Shepard, Jenner & Block LLP, lead Trial Counsel; and Lauren M. Greene, Jenner & Block LLP, Trial Counsel.

- Defendants' Counsel. Robert M. Schwartz, Quinn Emanuel Urquhart & Sullivan, LLP, lead Trial Counsel; Daniel C. Posner, Quinn Emanuel Urquhart & Sullivan, LLP, lead Trial Counsel; Aaron Perahia, Quinn Emanuel Urquhart & Sullivan, LLP, Trial Counsel; Moon Hee Lee, Quinn Emanuel Urquhart & Sullivan, LLP, Trial Counsel; Bradley Kahn, Quinn Emanuel Urquhart & Sullivan, LLP, Trial Counsel.

10.    Special Requests/Other Issues. None.

11.    Pretrial Dates. Pursuant to Local Rule 26-1 and the Scheduling Conference Order, the Parties have conferred and propose the following trial and pretrial dates.

- Trial: October 25, 2027
- Fact Discovery Cutoff: June 21, 2027
- Expert Deadlines:
    - Initial Disclosures: May 31, 2027
    - Rebuttal Disclosures: June 21, 2027
- Expert Discovery Cutoff: July 19, 2027

JOINT RULE 26(f) REPORT

- Discovery Motion Filing Cutoff: July 19, 2027
- Non-Discovery Motion Filing Cutoff: August 2, 2027
- ADR Deadline: August 16, 2027

DATED: April 21, 2026          JENNER & BLOCK LLP


                               By  */s/ David R. Singer*
                                   David R. Singer
                                   Julie A. Shepard
                                   Lauren M. Greene
                                   *Attorneys for Plaintiffs*


DATED: April 21, 2026          QUINN EMANUEL URQUHART
                                   & SULLIVAN, LLP


                               By  */s/ Robert M. Schwartz*
                                   Robert M. Schwartz
                                   Daniel C. Posner
                                   Aaron Perahia
                                   Moon Hee Lee
                                   Bradley Kahn
                                   *Attorneys for Defendants*

JOINT RULE 26(f) REPORT

## **ATTESTATION STATEMENT**

I, David R. Singer, the filer of this Joint Rule 26(f) Report, attest pursuant to C.D. Cal. Local Rule 5-4.3.4(a)(2) that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: April 21, 2026    JENNER & BLOCK LLP


By  /s/ David R. Singer
    David R. Singer
    Julie A. Shepard
    Lauren M. Greene
    *Attorneys for Plaintiffs*

JOINT RULE 26(f) REPORT