**JENNER & BLOCK LLP**
David R. Singer (SBN 204699)
dsinger@jenner.com
Julie A. Shepard (SBN 175538)
jshepard@jenner.com
Lauren M. Greene (SBN 271397)
lgreene@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:  (213) 239-5100
Facsimile:  (213) 239-5199

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISNEY ENTERPRISES, INC.; UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP; WARNER BROS. ENTERTAINMENT INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> MINIMAX, et al., <br><br> Defendants. | Case No. 2:25-cv-08768-SB-E <br><br> Hon. Judge Stanley Blumenfeld, Jr. <br><br> **PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS DEFENDANTS MINIMAX AND SHANGHAI XIYU JIZHI TECHNOLOGY CO. LTD. PURSUANT TO RULE 12(b)(2)** <br><br> Date:  May 29, 2026 <br> Time:  8:30 a.m. <br> Ctrm:  6C <br><br> Trial Date: not set |

# **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................. 1

II.     LEGAL STANDARD ...........................................................................................3

III.    ARGUMENT.........................................................................................................4

   A.   Conduct By "MiniMax" Is Conduct by SXJT. ........................................... 4

   B.   SXJT Purposely Directed Its Activities at the United States. ........................ 6

        1.    SXJT Engaged in Intentional Acts............................................................. 6

        2.    SXJT's Conduct Was Expressly Aimed at the United States............... 7

              a.    SXJT's trademark applications for MiniMax are compelling evidence of its express aiming. .................... 7

              b.    SXJT has expressly aimed additional conduct toward the United States. ................................. 11

        3.    SXJT Knew Plaintiffs Were Likely to Suffer Harm in the United States. ........................................... 16

   C.   The Remaining Factors Favor the Exercise of Specific Jurisdiction Over SXJT. .......................................... 17

IV.     PLAINTIFFS' ALTERNATIVE REQUEST  FOR JURISDICTIONAL DISCOVERY ............................................ 18

V.      CONCLUSION................................................................................................... 19

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aether, LLC v. Unt Holdings, OU*,
2022 WL 16554691 (C.D. Cal. Oct. 31, 2022) (Frimpong, J.) ......................................9

*AirWair Int'l Ltd. v. Schultz*,
73 F. Supp. 3d 1225 (N.D. Cal. 2014)........................................................................6

*Alhathloul v. DarkMatter Grp.*,
795 F. Supp. 3d 1253 (D. Or. 2025) .........................................................................11

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*,
480 U.S. 102 (1987)..................................................................................................18

*Axiom Foods, Inc. v. Acerchem International, Inc.*,
874 F.3d 1064 (9th Cir. 2017) ..................................................................................16

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
11 F.4th 972 (9th Cir. 2021) ..............................................................................*passim*

*Battle v. Taylor James, LLC*,
607 F. Supp. 3d 1025 (C.D. Cal. 2022) ......................................................................3

*Blizzard Ent., Inc. v. Joyfun Inc Co., Ltd.*,
2020 WL 1972284 (C.D. Cal. Feb. 7, 2020) ........................................................7, 15

*In re Boon Glob. Ltd.*,
923 F.3d 643 (9th Cir. 2019) ......................................................................................3

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) ..................................................................................19

*Briskin v. Shopify*,
135 F.4th 739 (9th Cir. 2025) .........................................................................3, 12, 17

*Calder v. Jones*,
465 U.S. 783 (1984).............................................................................................*passim*

*Clarke v. TNSG Health Co., Ltd*,
2022 WL 4596596 (C.D. Cal. Mar. 23, 2022).........................................................16

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

*Climax Portable Mach. Tools, Inc. v. Trawema GmbH*,
2020 WL 1304487 (D. Or. Mar. 19, 2020)........................................................ 11

*Desire, LLC v. Manna Textiles, Inc.*,
986 F.3d 1253 (9th Cir. 2021) ........................................................................ 12

*Doe v. WebGroup Czech Republic, a.s.*,
93 F.4th 442 (9th Cir. 2024) .......................................................................... 17

*DPR Constr., Inc. v. Anka (Cortez Hill) LLC*,
2008 WL 11508492 (S.D. Cal. Mar. 27, 2008)................................................. 5

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*,
711 F. Supp. 2d 1074 (C.D. Cal. 2010) .......................................................... 18

*Expensify, Inc. v. Swappoint AG*,
2023 WL 6323103 (N.D. Cal. Sept. 28, 2023)................................................. 9

*Facebook, Inc. v. Sahinturk*,
2022 WL 1304471 (N.D. Cal. May 2, 2022)............................................... 7, 11

*Fumoto Giken Co. v. Mistuoka*,
2015 WL 12766167 (C.D. Cal. Apr. 16, 2015) ............................................... 9

*Goes Int'l, AB v. Dodur Ltd.*,
2015 WL 5043296 (N.D. Cal. Aug. 26, 2015) ............................................... 15

*Harman Int'l Indus., Inc. v. Jem Accessories, Inc.*,
2021 WL 3265013 (C.D. Cal. Apr. 8, 2021).................................................... 17

*Intent Drivers, Inc. v. Primesolarquotes*,
2022 WL 17080203 (C.D. Cal. Aug. 4, 2022) ............................................... 15

*Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*,
140 F.4th 1304 (11th Cir. 2025) ..................................................................... 9

*Lang Van, Inc. v. VNG Corp.*,
40 F.4th 1034 (9th Cir. 2022) ...............................................................*passim*

*LHF Prods. Inc. v. Doe 1*,
736 F. App'x 688 (9th Cir. 2018).................................................................... 12

*Loomis v. Slendertone Distribution, Inc.*,
420 F. Supp. 3d 1046 (S.D. Cal. 2019) .......................................................... 17

iii

*LTN Media LLC v. Bihaco Commc'n Trading & Servs. Corp.*,
 2025 WL 3190869 (C.D. Cal. Sept. 30, 2025) ........................................................... 9, 10

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
 647 F.3d 1218 (9th Cir. 2011) .......................................................................... 14

*Michael v. New Century Fin. Servs.*,
 65 F. Supp. 3d 797 (N.D. Cal. 2014) ................................................................... 7

*Monster Cable Prods., Inc. v. Euroflex S.R.L.*,
 642 F. Supp. 2d 1001 (N.D. Cal. 2009) ................................................................. 7

*Nat'l Pat. Dev. Corp. v. T.J. Smith & Nephew Ltd.*,
 877 F.2d 1003 (D.C. Cir. 1989) (en banc) .............................................................. 8

*Om Recs., LLC v. OM Developpement, SAS*,
 2024 WL 3049449 (N.D. Cal. June 17, 2024) .......................................................... 10

*Schwartz v. Upper Deck Co.*,
 183 F.R.D. 672 (S.D. Cal. 1999) ...................................................................... 18

*Townsend v. Monster Beverage Corp.*,
 303 F. Supp. 3d 1010 (C.D. Cal. 2018) ............................................................... 18

*Will Co. v. Lee*,
 47 F.4th 917 (9th Cir. 2022) ...................................................................*passim*

**Statutes**

15 U.S.C. § 1051(d) ................................................................................... 4

17 U.S.C. § 504(c)(1) ................................................................................ 12

**Court Rules**

Federal Rule of Civil Procedure 4(k)(2) ......................................................*passim*

Federal Rule of Civil Procedure 12(b)(2) .............................................................. 3

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

## I.    INTRODUCTION

No entity that directs its infringing business at the U.S. market is exempt from U.S. copyright laws, regardless of where it is based.  Defendant Shanghai Xiyu Jizhi Technology Co. Ltd. ("SXJT")[1] purposefully directs its infringing AI image and video generating service to the United States and avails itself of the rights and protections of doing business here.[2]  Over the last century, Plaintiffs Disney Enterprises, Inc., Marvel Characters, Inc., MVL Film Finance LLC, Lucasfilm Ltd. LLC, Twentieth Century Fox Film Corporation, Universal City Studios Productions LLLP, DreamWorks Animation L.L.C., Warner Bros. Entertainment Inc., DC Comics, The Cartoon Network, Inc., Turner Entertainment Co., and Hanna-Barbera Productions Inc.'s (collectively, "Plaintiffs") have driven American creativity and created enormous economic value through their investment in storytelling, which is made possible by the protections of U.S. copyright law.  SXJT's purposeful and rampant copyright infringement directed at the United States market unlawfully exploits Plaintiffs' copyrighted movies, television shows, and characters, and SXJT must be held accountable in this Court.

To evade liability for its extensive and clear copyright violations, SXJT argues this Court lacks personal jurisdiction over it.  But this ignores all the ways SXJT, not just its co-Defendant and sister company Nanonoble PTE Ltd. ("Nanonoble"), has actively

---

[1] During the parties' Local Rule 7-3 meet-and-confer discussion, counsel for Plaintiffs indicated that Plaintiffs would consider dismissing the MiniMax defendant if there was no actual entity named "MiniMax" and asked Defendants to provide further information for Plaintiffs to evaluate whether to dismiss the defendant prior to motion practice. Defendants did not provide any information prior to filing this motion.  In the motion, Defendants represent to the Court that there is no corporate entity named "MiniMax."  Instead, MiniMax is a fictitious business name for defendant SXJT.  *See* Mot. 1, 4; Declaration of Xue Zizhao ("Zizhao Decl."), ¶ 7; *see* Declaration of Lauren M. Greene ("Greene Decl."), Ex. 1.  Based on this representation, at the May 1, 2026 Mandatory Scheduling Conference, Plaintiffs requested that the Court dismiss MiniMax without prejudice, which the Court granted.

[2] Capitalized terms not defined herein shall have the same meaning as in the Complaint.

1

engaged in culpable conduct directed toward the United States and availed itself of U.S. rights and protections, as thoroughly alleged in the Complaint. SXJT has sought the protection of the laws of the United States by filing at least three trademark applications with the United States Patent and Trademark Office ("USPTO"). In connection with those applications, SXJT has confirmed in a sworn statement that *it* is using the MiniMax name to conduct business in the United States and sell the infringing Hailuo AI service. As a result, the conduct alleged in the Complaint done under the MiniMax name and mark is conduct *by SXJT*. This includes the unabashed use of Plaintiffs' Copyrighted Works in the MiniMax social media advertising for Hailuo AI. And it includes the reproduction, distribution, public display, and public performance of infringing images and videos generated by Hailuo AI for consumers in the U.S. and labeled with SXJT's MiniMax trademark.

Additionally, SXJT's motion confirms that it developed the AI model that powers Hailuo AI. Training an AI model to serve as an unauthorized virtual vending machine for Plaintiffs' Copyrighted Works undoubtedly included scraping and copying Plaintiffs' works from U.S.-based websites and servers—conduct that is both directed at the United States and targets Plaintiffs and their intellectual property. SXJT's training and development of Hailuo AI also includes the selection of Plaintiffs' Copyrighted Works as part of the training materials, effectively storing copies of Plaintiffs' copyrighted characters on the Hailuo AI platform and (in concert with defendant Nanonoble) making Plaintiffs' copyrighted characters available to U.S. subscribers. SXJT's sworn statements to the USPTO further confirm that SXJT makes its infringing AI models available on third-party U.S.-based websites through its application programming interface ("API"). SXJT's (aka MiniMax's) conduct is an instrumental and substantial part of a course of conduct that violates Plaintiffs' exclusive rights to reproduce, distribute, publicly display, and publicly perform their copyrighted works.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

Taking all of SXJT's conduct toward the United States together, SXJT is clearly subject to the jurisdiction of this Court. It is not a close call. Therefore, this Court should deny SXJT's motion to dismiss for lack of personal jurisdiction.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss for lack of personal jurisdiction. Where, as here, a defendant's motion to dismiss is "based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 978 (9th Cir. 2021) (citations omitted). At this stage, "uncontroverted allegations in [a plaintiff's] complaint must be taken as true," and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019); *Battle v. Taylor James, LLC*, 607 F. Supp. 3d 1025, 1036 (C.D. Cal. 2022) ("courts deem all uncontroverted allegations in the complaint to be true and resolve factual disputes in favor of the nonmoving party.").

Under Federal Rule of Civil Procedure 4(k)(2), jurisdiction over a foreign entity is proper where "(1) the action arises under federal law, (2) 'the defendant is not subject to jurisdiction in any state's courts of general jurisdiction,' and (3) the court's exercise of jurisdiction comports with due process." *Ayla*, 11 F.4th at 978 (citation omitted). Here, the first two elements of jurisdiction are not in dispute. The only issue before the Court is whether exercising jurisdiction over SXJT comports with due process.

The due process analysis under Rule 4(k)(2) "is nearly identical to traditional personal jurisdiction analysis." *Id*. at 979. The court evaluates whether the defendant has "'minimum contacts' with the relevant forum such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Will Co. v. Lee*, 47 F.4th 917, 922 (9th Cir. 2022), *overruled in part on other grounds*, *Briskin v. Shopify*, 135 F.4th 739 (9th Cir. 2025) (citation omitted). Instead of analyzing the defendant's contacts with only the forum state, however, the court considers the defendant's "contacts with the nation as a whole." *Ayla*, 11 F.4th at 979. Under Rule 4(k)(2), courts evaluate whether the

3

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

defendant engaged in "purposeful activities or transactions with the United States, with an act that shows defendant purposefully availing itself of the privileges of doing business in the United States, and thereby invoking the benefits and protections of its laws." *Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1041 (9th Cir. 2022).

In the context of tort claims, like the Copyright Act claims here, "a defendant has the requisite minimum contacts with the forum if: (1) the defendant purposefully directs its activities at the forum, (2) the lawsuit arises out of or relates to the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." *Will Co.*, 47 F.4th at 922 (citation modified). Under Rule 4(k)(2), "once the plaintiff has satisfied the first two prongs, the burden then shifts to the defendant to show that the jurisdiction would be unreasonable." *Lang Van*, 40 F.4th at 1041.

As discussed below, SXJT has the requisite minimum contacts with the United States to support this Court's exercise of personal jurisdiction over it.

### III.    ARGUMENT

**A.    Conduct By "MiniMax" Is Conduct by SXJT.**

In August 2024, SXJT availed itself of the laws of the United States when it filed multiple trademark applications for the trademark and service mark "MiniMax." Compl., Ex. E. SXJT, through its U.S. counsel (located in this District), and affirmed in a sworn statement that SXJT intended to use the MiniMax name and mark for, among other things "Downloadable computer software for providing artificial intelligence (AI) services; . . . [and] Downloadable application programming interface (API) software for accessing artificial intelligence large model services[.]" Compl., ¶ 36, Ex. E at pp. 2, 4.

Then, in February 2026, SXJT submitted (also through U.S. counsel) its 15 U.S.C. § 1051(d) Statement of Use and supporting specimen of use in commerce to the United States Patent and Trademark Office ("USPTO") in support of its MiniMax trademark and service mark application. Greene Decl., Ex. 1. In the Statement of Use, SXJT confirmed that it is currently using MiniMax "in commerce on or in connection with all of the goods/services" in the trademark application, including "Software as a service (SAAS)

4

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

using AI for software development, generative AI, … content creation, … [and] Software as a service (SAAS) using AI for processing and editing text, speech, audio, and visual content." *Id*. at p. 9.  SXJT's Statement of Use, its contents and specimen, were affirmed with a *sworn statement* from SXJT's IP Director, SONG Yiwen on February 5, 2026, less than three months ago.  *Id*. at p. 10.  In the accompanying declaration, SONG Yiwen affirms that to their "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made [in the Statement of Use] have evidentiary support."  *Id*.  In other words, the IP Director at SXJT swore under penalty of "fine or imprisonment, or both, under 18 U.S.C. § 1001," that SXJT is using the MiniMax mark in commerce to conduct business in the United States.  *Id*.

According to SXJT's Statement of Use, the accompanying specimen of use consists of "[s]creenshots of *the client's [i.e., SXJT's] website* showing the mark in association with the covered services."  *Id*. at p. 7 (emphasis added).  The MiniMax English language "About Us" webpage that SXJT submitted as its specimen supporting the trademark application confirms how SXJT is using the MiniMax mark in commerce in the United States.  SXJT represents that it is offering "*our* major AI-native products – including … *Hailuo AI*" under the MiniMax name.  *Id*. at p. 3 (emphasis added).  SXJT's specimen of use also includes a MiniMax webpage, also in English, through which it *sells* access to the AI models that power the Hailuo AI website, including what it calls "MiniMax-Hailuo-2.3-Fast" and "MiniMax-Hailuo-02."  *Id*. at p. 5.  The bottom of both webpages list "Video Hailuo" as one of MiniMax's products.  *Id*. at pp. 3-5.  The bottom of the "About Us" webpage includes "© 2026 MiniMax," establishing that SXJT, doing business as MiniMax, is also seeking the protections of U.S. copyright law for its website.  *Id*. at p. 4.

SXJT's sworn Statement of Use and specimen of use confirm that MiniMax is the business name that SXJT has used and continues to use in connection with the infringing Hailuo AI service in the United States.  As a result, statements and conduct by "MiniMax," including activities in the United States detailed in the Complaint, can plainly be attributed

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

to SXJT for purposes of evaluating SXJT's contacts with the U.S. *See DPR Constr., Inc. v. Anka (Cortez Hill) LLC*, 2008 WL 11508492 at *6 (S.D. Cal. Mar. 27, 2008) (defendants' contacts with forum state under fictitious business name were sufficient to confer jurisdiction).

In its motion to dismiss, SXJT concedes, as it must, that "[t]he jurisdictional analysis for 'MiniMax' thus reduces to SXJT." (Mot. at 1:15.)  And, if that weren't enough, Xue Zizhao, a Vice President at SXJT's parent company, confirms under oath that SXJT develops AI video generation models (Zizhao Decl. at ¶ 5) and that "MiniMax" is a "brand name used for AI Products and services" (*id.* at ¶ 7).

Notably, the Motion argues that conduct in the United States using the MiniMax name **is not** conduct by Nanonoble.  SXJT argues that Nanonoble "contracts in its own name, files trademarks in its own name" and appears on U.S. app stores in its name.  (Mot. at 8:18-25.)  Therefore, where "MiniMax" appears to be engaging in commerce in the United States, it is necessarily SXJT engaging in commerce in the United States.

**B.    SXJT Purposely Directed Its Activities at the United States.**

To determine whether a defendant "purposefully directed" its activities at the forum, courts in the Ninth Circuit apply the "*Calder* effects test" and ask whether the defendant: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Will Co.*, 47 F.4th at 922 (citations omitted); *see also Calder v. Jones*, 465 U.S. 783 (1984).  As discussed below, the *Calder* effects test establishes that this Court has jurisdiction over SXJT.

**1.    SXJT Engaged in Intentional Acts.**

There can be no doubt that SXJT has committed numerous intentional acts relevant to Plaintiffs' claims.  The "threshold of what constitutes an intentional act is relatively low." *AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1233 (N.D. Cal. 2014).  As discussed in detail below, SXJT has filed trademark applications, placed advertising, offered its infringing AI models on a website, scraped website data, and distributed an app in an app store. *See* Greene Decl., Exs. 1-3; Compl., ¶¶ 162(a), 169-172, 175-185; Zizhao

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

Decl., Ex. D (listing "MiniMax AI" as the developer in the Google Play store).  Courts have found each of these actions to be intentional acts.  *Will Co.*, 47 F.4th at 922 ("operating a passive website, purchasing a domain name and purchasing domain privacy services are all intentional acts.") (citation omitted); *Monster Cable Prods., Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1010 (N.D. Cal. 2009) (applying to the USPTO for a trademark registration was an intentional act); *Facebook, Inc. v. Sahinturk*, 2022 WL 1304471, at *4 (N.D. Cal. May 2, 2022) ("use of software to scrape Instagram user data" constituted an intentional act); *Blizzard Ent., Inc. v. Joyfun Inc Co., Ltd.*, 2020 WL 1972284, at *6 (C.D. Cal. Feb. 7, 2020) (finding defendant's "distributing the Infringing Game on platforms such as the Google Play store and Microsoft App store, selling virtual currency to American customers, and advertising the Infringing Game via platforms like Facebook" to be intentional acts).  The first factor of the *Calder* effects test is clearly satisfied here.

## 2.    SXJT's Conduct Was Expressly Aimed at the United States.

The second factor under *Calder* asks whether the defendant "expressly aimed" its conduct toward the forum.  *Ayla*, 11 F.4th at 980.  The express aiming requirement is satisfied when a defendant engages in "conduct directly targeting the forum." *Id.* (citation and quotation omitted).  A plaintiff need only show that "***at least one*** of Defendants' intentional acts was expressly aimed at [the forum] in order for this Court to exercise jurisdiction." *Michael v. New Century Fin. Servs.*, 65 F. Supp. 3d 797, 807 (N.D. Cal. 2014) (emphasis added).  SXJT has expressly aimed numerous acts at the United States.

### a.    SXJT's trademark applications for MiniMax are compelling evidence of its express aiming.

SXJT argues that the only intentional acts it aimed at the United States are its trademark applications for MiniMax and that such conduct alone is insufficient to confer personal jurisdiction.  As detailed below, SXJT's trademark applications are not SXJT's only conduct in the United States and instead are just one aspect of SXJT's operations in this country.  Nevertheless, recent Ninth Circuit case law explains that applying for trademark protection and submitting specimens of the mark being used in commerce is

evidence of "intentional direction into the United States market" sufficient for personal jurisdiction. *Lang Van*, 40 F.4th at 1042.  In *Ayla, supra*, the Court noted that trademark registrations could be "compelling evidence" that the defendant "satisfied the purposeful availment or direction test." 11 F.4th at 982 n.4 (declining to consider whether a withdrawn application constitutes a significant United States contact for personal jurisdiction purposes) (*citing Nat'l Pat. Dev. Corp. v. T.J. Smith & Nephew Ltd.*, 877 F.2d 1003, 1009-10 (D.C. Cir. 1989) (en banc) ("By registering a patent in the United States Patent and Trademark Office, a party residing abroad purposefully avails itself of the benefits and protections patent registration in this country affords.")).

Here, SXJT's trademark applications for MiniMax are compelling evidence of its intentional business activities in the United States.  MiniMax has actively prosecuted its trademark applications with the USPTO by responding to Office Actions, updating counsel information, and submitting Statements of Use and corresponding specimen of use.  Greene Decl., Exs. 1-3.  SXJT's continuous interaction with the USPTO establishes SXJT's intent to exploit the U.S. market and avail itself of the laws of the United States.

Not only did SXJT file and prosecute trademark applications, but it also swore to the USPTO, subject to criminal penalties under 18 U.S.C. § 1001, that it was currently using the MiniMax trademark in commerce in the United States.  Greene Decl., Ex. 1 at p. 10. To substantiate its use in commerce and further its trademark application, SXJT submitted to the USPTO screenshots showing it using the MiniMax mark on its English-language website.  *Id*. at p. 3-5.  In other words, SXJT's trademark applications themselves are clearly not SXJT's only conduct in the United States.  The specimen and accompanying sworn statement from an SXJT Director confirm that SXJT operates the minimax.io website in the United States and provides that SXJT's proprietary AI models "power ***our*** major AI-native products – including … ***Hailuo AI***." *Id*. at p. 3 (emphasis added).  SXJT's MiniMax website also lists "Video Hailuo" as one of its products on two separate pages. *Id*. at pp. 4-5.  Additionally, the specimen confirms that MiniMax's Hailuo AI models are available for purchase on the MiniMax website.  *Id*. at p. 5.  The clear takeaway from

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

SXJT's own USPTO submission is that the Hailuo AI service at issue in this litigation is one of *SXJT's* AI products that is available for purchase on *SXJT's* website by U.S. consumers.

The case law cited by SXJT (Mot. 7) is readily distinguishable, as it relies on a case that predates *Ayla*. SXJT cites *Fumoto Giken Co. v. Mistuoka* ("*Fumoto*") for the proposition that "the mere registration of a trademark with the PTO, without more," does not amount to the "type of minimum contacts which would justify haling a foreign defendant into federal court." 2015 WL 12766167, at *5 (C.D. Cal. Apr. 16, 2015). *Fumoto* is from 2015, six years before the Ninth Circuit explained that trademark applications could be "compelling evidence" of purposeful direction for personal jurisdiction. *See Ayla*, 11 F.4th at 982 n.4. Indeed, in *LTN Media LLC v. Bihaco Commc'n Trading & Servs. Corp.*, District Court Judge Dolly M. Gee revisited her prior decision in *Fumoto* and noted how the Ninth Circuit's language in *Ayla* impacted its reasoning. *See* 2025 WL 3190869, *5 (C.D. Cal. Sept. 30, 2025). As Judge Gee explained:

> Six years after this Court's order in *Fumoto Giken Co.*, the Ninth Circuit noted that trademark registrations *may* be "compelling evidence" of purposeful direction to the United States under Rule 4(k)(2) to the extent they show that a defendant has availed itself of the benefits and protections that such registrations in this country afford.

*Id.* (original emphasis). Following the Ninth Circuit's direction in *Ayla*, Judge Gee determined that the defendant's "filing of eight copyright registrations is compelling evidence of purposeful direction to the United States under a Rule 4(k)(2) analysis." *Id*. Other courts in this Circuit have reached the same conclusion. *See Expensify, Inc. v. Swappoint AG*, 2023 WL 6323103, at *7 (N.D. Cal. Sept. 28, 2023) ("The court's holding is that the trademark registration is enough" to satisfy the purposeful direction requirement.); *Aether, LLC v. Unt Holdings, OU*, 2022 WL 16554691, at *9 (C.D. Cal. Oct. 31, 2022) (Frimpong, J.) ("having considered the underlying rationale of 'minimum contacts'—'that a nonresident will be aware that it is subject to suit in the forum state'—the Court finds a trademark application to be sufficient"); *see also Jekyll Island-State Park*

*Auth. v. Polygroup Macau Ltd.*, 140 F.4th 1304, 1319 (11th Cir. 2025) (discussing *Ayla* and holding that registration of a trademark is sufficient to show purposeful direction because "making the deliberate decision to register a trademark shows an intent to capitalize on the benefits and protections that trademark registration in this country affords").

 *LTN Media* is particularly instructive, as the defendant in *LTN Media* did not "simply register copyrights and then take [ ] no other action" but instead affirmatively used the copyright registration to further its rights in the United States. *See LTN Media*, 2025 WL 3190869 at *5. Likewise, SXJT is actively using the MiniMax trademark that it seeks to register in commerce in connection with its infringing Hailuo AI service. Indeed, SXJT even emblazons its MiniMax logo onto infringing image and video outputs generated by Hailuo AI to indicate that *it* is the source of the output. *See* Compl., ¶¶ 6-8, 10-11, 118-160, 169-172, 174, 186-187, 189, 196, 199. Subscribers have to pay for the ability to remove the MiniMax logo from outputs generated by Hailuo AI. *Id.*, ¶ 114. Therefore, *Fumoto* does not support SXJT's position.[3]

 While applying for trademark protection alone is compelling evidence of SXJT's purposeful direction into the U.S. market, that is not the only conduct shown by the trademark applications that Plaintiffs are relying on to establish that this Court has personal jurisdiction over SXJT. SXJT's sworn representations to the USPTO – after this lawsuit was filed – independently demonstrate that SXJT is using the MiniMax mark specifically in connection with the infringing Hailuo AI service. That separate conduct further supports this Court's exercise of jurisdiction over SXJT. There can be no doubt that SXJT's trademark applications and SXJT's sworn statements in the U.S. detailed in the

---

[3] The other case relied on by SXJT, *Om Recs., LLC v. OM Developpement, SAS*, is also distinguishable. *See* 2024 WL 3049449, at *13 (N.D. Cal. June 17, 2024). Not only did the court rely heavily on *Fumoto*, stating that it "finds the reasoning in *Fumoto* persuasive," but the trademark that the plaintiff alleged helped establish personal jurisdiction had been abandoned by the defendant. *Id.* Here, less than three months ago, SXJT confirmed to the USPTO that it was currently using the MiniMax mark in commerce. Greene Decl., Ex. 1.

10

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

applications, establish that SXJT has purposefully directed its conduct towards the United States subjecting it to the jurisdiction in this forum.

### b.    SXJT has expressly aimed additional conduct toward the United States.

SXJT argues that "every" jurisdictional allegation in the Complaint beyond the MiniMax trademark applications relates only to Nanonoble. (Mot., 1:20-22.) SXJT then lists the "forum selection clause, the developer agreements, the social media advertising, [and] the content distribution" as the other jurisdictional allegations that concern Nanonoble. *Id.* But this is not the complete list of conduct the Complaint alleges that SXJT aimed at the United States. Indeed, SXJT ignores significant conduct in the United States that is alleged in the Complaint.

*First*, it was SXJT that developed the AI model that powers Hailuo AI. Zizhao Decl., ¶ 5; Greene Decl., Ex. 1 at p. 3. As Plaintiffs allege in the Complaint, SXJT intentionally copied Plaintiffs' works numerous times to train its AI model, including so that the model would reliably and repeatedly generate copies and derivatives of Plaintiffs' famous copyrighted characters which were then made available for distribution in the United States. Compl., ¶¶ 161-164. While SXJT claims this training was conducted "through employees in Shanghai" (Zizhao Decl., ¶ 9), it is highly likely that SXJT copied Plaintiffs' works, in part, by scraping the U.S.-hosted and U.S.-facing websites of Plaintiffs or of U.S.-based companies like Meta/Facebook and Google/YouTube, with servers in the U.S. Scraping websites and servers in a forum as part of a tortious course of conduct constitutes express aiming. *See Alhathloul v. DarkMatter Grp.*, 795 F. Supp. 3d 1253, 1271 (D. Or. 2025) ("express aiming occurs when a defendant accesses a plaintiff's protected computer in the forum to commit a tort"); *Climax Portable Mach. Tools, Inc. v. Trawema GmbH*, 2020 WL 1304487, at *7 (D. Or. Mar. 19, 2020) (holding the defendants' intentional tortious accessing of the plaintiff's server in Oregon satisfied express aiming); *Facebook, Inc.*, 2022 WL 1304471, at *4 (holding that the "use of scraping software to send automated

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

commands to Plaintiffs' California-based computers satisfies the 'express aiming' element of the *Calder* 'effects' test") (citation omitted).

*Second*, SXJT's infringing AI model is part of the Hailuo AI service, which is made available, through an active English-language website, in the United States. SXJT argues that it is defendant Nanonoble (SXJT's "sister company" (Zizhao Decl., ¶ 4)) that offers the Hailuo AI service in the United States through the Apple Store and Google Play Store (Zizhao Decl., ¶ 11), but that does not shield SXJT from liability for its role in making the infringing service available in the U.S. The Ninth Circuit has made clear that multiple actors can be liable for causing the same infringement. *See Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1263 (9th Cir. 2021) ("[W]here an upstream defendant causes, whether directly or indirectly, a downstream defendant's infringement, the upstream defendant is a joint tortfeasor in, and therefore jointly and severally liable for, the plaintiff's harm caused by the downstream defendant's conduct."); *see also LHF Prods. Inc. v. Doe 1*, 736 F. App'x 688, 690–91 (9th Cir. 2018) (applying joint and several liability under 17 U.S.C. § 504(c)(1) where multiple infringers were liable for the same infringement). Additionally, SXJT applies its MiniMax logo to outputs generated by Hailuo AI, confirming that it is working in concert with Nanonoble to provide and market the service. *See* Compl., ¶¶ 6-8, 10-11, 118-160, 169-172, 174, 186-187, 189, 196, 199. Based on Defendants' representations that SXJT developed the AI model behind Hailuo AI and SXJT's use of its MiniMax trademark on Hailuo AI outputs, SXJT is directly and jointly responsible for making that infringing service available in the United States.

Accordingly, this Court can consider the Hailuo AI service itself in evaluating SXJT's express aiming at the United States. In *Briskin v. Shopify*, the Ninth Circuit clarified when the operation of a website can support express aiming under the *Calder* effects test. The Ninth Circuit explained that "an interactive platform 'expressly aims' its wrongful conduct toward a forum state when its contacts with the forum are its "own choice and not random, isolated, or fortuitous." *Briskin*, 135 F.4th at 758 (citations omitted). As alleged in the Complaint, SXJT in concert with Nanonoble, intentionally target their Hailuo

12

AI service toward U.S. audiences:  the service distributes, publicly performs, and publicly displays infringing copies of Plaintiffs' works in the U.S. (and adds SXJT's trademark to those infringing copies); the service is distributed through U.S. app stores; the service uses content delivery network ("CDN") services in the United States to improve its performance; and the service is provided in English.  *See* Compl., ¶ 36(a)-(m).  All of these actions demonstrate SXJT's own intentional choices to exploit the U.S. market.

*Third*, SXJT distributes its AI models, including its infringing Hailuo models, to consumers in the United States through application programming interfaces or APIs.  An API is a means through which software on a third-party website can send a prompt to an SXJT AI model, receive an output from the model, and present the output on that third-party website.  In this arrangement, the third-party acts as a middleman relaying prompts and outputs between the consumer using the third-party site and SXJT's AI models.  Important here, several third party websites through which SXJT offers its AI models are U.S.-based websites operated by U.S. companies.  For example, SXJT, using its trademark "MiniMax," issued a press release detailing its API partnership with U.S.-based company Fal.ai.  Greene Decl., Ex. 9.  In practice, a consumer on the Fal.ai website can access SXJT's MiniMax Hailuo-2.3 text-to-video model directly on the Fal.ai website.  *Id.*, Ex. 8.  In addition, SXJT makes its AI models available on U.S.-based websites in partnership with other U.S. companies Higgsfield, Poe, and OpenArt.  Greene Decl., Exs. 11, 14, 16.  SXJT's specimen of use confirms that *it* is behind MiniMax's API offerings.  Greene Decl., Ex. 1 at p. 5 (providing the pricing for "MiniMax API Platform" and details for several "MiniMax-Hailuo" AI models).  Thus, it is SXJT that is making its infringing AI models available to consumers in the United States through APIs and U.S. intermediaries.  This is yet another one of SXJT's significant contacts with the United States.

*Fourth*, SXJT's advertising under the MiniMax trademark in the United States is further evidence of its intent to exploit the U.S. market.  Conduct supporting the exercise of personal jurisdiction exists when a defendant "both actively appealed to and profited

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

from an audience" in the U.S. forum. *Will Co.*, 47 F.4th at 922–23 (9th Cir. 2022) (simplified). The Instagram, X, and YouTube accounts for MiniMax and Hailuo AI—U.S. social media websites where SXJT posts in English—include SXJT's MiniMax name in the username.[4] Compl., ¶ 169 (account name listed as "HailuoAI (MiniMax)"); Greene Decl., Exs. 4-7 (same). These social media accounts feature numerous posts where SXJT advertises Hailuo AI using Plaintiffs' copyrighted characters. *See* Compl., ¶¶ 169-172, 175-185. SXJT's willful use of Plaintiffs' copyrighted characters—all owned by U.S. studios and popularized in American movies and television shows—in its advertising on YouTube and Instagram demonstrates that SXJT actively appeals to subscribers in the United States. *Ayla*, 11 F.4th at 981 (defendants' advertising "reinforce[d] our conclusion here that [defendant] satisfied the purposeful direction requirement by directing an insistent marketing campaign toward the forum") (citation omitted); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011) (the "most salient" fact demonstrating express aiming was "the fact that [defendant] used [plaintiff]'s copyrighted photos as part of its exploitation of the California market for its own commercial gain"). Even more, both the Hailuo AI (MiniMax) and MiniMax accounts on X show the account location as *San Francisco*. Greene Decl., Ex. 6-7. Moreover, SXJT regularly markets to and engages with U.S. consumers through events in the United States and actively advertises such engagement on its website. In 2026 alone, SXJT published news stories on its website showcasing its participation in four events in the United States. Greene Decl., Exs. 18-21.

*Fifth*, certain conduct that SXJT claims to be attributable only to Nanonoble also demonstrates SXJT's contacts with the United States. For example, SXJT claims that

---

[4] SXJT claims that it does not "market" or "advertise" any products or services in the United States. Z. Zizhao Decl., ¶ 9. Yet Defendants' motion is vague as to what entity controls the HailuoAI (MiniMax) social media pages. Given that SXJT confirmed to the USPTO that it uses the MiniMax name in commerce in the United States in connection with Hailuo AI (Greene Decl., Ex. 1), as well as SXJT's claim that Nanonoble acts "in its own name," the strong inference is that SXJT is behind these social media pages. (Mot. at 8:18-20.)

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

Nanonoble distributes Hailuo AI on the Google Play store, but the store actually identifies MiniMax AI (i.e., SXJT) as the developer with no mention of Nanonoble, as shown below:



Zizhao Decl., Ex. D (emphasis added).  As the Ninth Circuit has noted, "courts have determined that a defendant 'purposefully availed itself of the privilege of conducting business in the United States by distributing the [infringing content] on platforms such as the Google Play store and Microsoft App store.'"  *Lang Van*, 40 F.4th at 1042 (*citing Blizzard Ent.,* 2020 WL 1972284, at *6; *Goes Int'l*, *AB v. Dodur Ltd.*, 2015 WL 5043296, at *9 (N.D. Cal. Aug. 26, 2015).  SXJT also argues that the Hailuo AI Terms of Service, which include a U.S. forum selection clause, are its sister company Nanonoble's terms, but the terms expressly purport to apply to Nanonoble's affiliates, which SXJT admits it is. Zizhao Decl., ¶ 4; *id*. Ex. A.  Therefore, the U.S. forum selection clause also supports the exercise of jurisdiction over SXJT.  *See Intent Drivers, Inc. v. Primesolarquotes*, 2022 WL 17080203, at *5 (C.D. Cal. Aug. 4, 2022) (holding that the choice of law and forum selection on a website's terms of use demonstrated express aiming at the forum).

*Finally*, SXJT argues that allegations that SXJT caused harm to Plaintiffs in California do not "create jurisdiction" over SXJT. (Mot., 9:4-5.) While *Walden v. Fiore* held that injury to a forum resident alone may not confer jurisdiction, the Ninth Circuit has confirmed that after *Walden* the concept of individualized targeting "remain[s] relevant to the minimum contacts inquiry." *Axiom Foods, Inc. v. Acerchem International, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017). As a result, courts have exercised personal jurisdiction over foreign defendants that "purposefully targeted American companies and their intellectual property." *Lang Van*, 40 F.4th at 1041. Here, as discussed above, SXJT has intentionally and repeatedly used Plaintiffs' copyrighted characters to draw subscribers to its service. Compl., ¶¶ 169-172, 175-185. There can be no doubt that SXJT "purposefully targeted American companies and their intellectual property." *Lang Van*, 40 F.4th at 1041.

SXJT's actions, viewed "in totality and in the light most favorable to plaintiff[s]" confirm that it expressly aimed its conduct toward the United States. *See Ayla*, 11 F.4th at 983. As a result, SXJT has "sufficient contacts with the country to exercise jurisdiction over [it] under Rule 4(k)(2)." *Clarke v. TNSG Health Co., Ltd*, 2022 WL 4596596, at *8 (C.D. Cal. Mar. 23, 2022) (finding that "the combination of Defendant's (1) trademark registrations, (2) potential use of those trademarks in United States commerce, and (3) individual targeting of California residents" satisfied Rule 4(k)(2)).

**3.    SXJT Knew Plaintiffs Were Likely to Suffer Harm in the United States.**

The final prong of the *Calder* effects test is whether "the conduct at issue caused harm in the United States, and [whether] that harm was foreseeable." *Will Co.*, 47 F.4th at 926. The answer here is clearly yes. Plaintiffs' Complaint alleges infringement of hundreds of copyrighted works and dozens of characters. These are some of the most recognized American movies and television franchises, featuring well-known characters like Batman, Spider-Man, Shrek, Darth Vader, the Minions, and Bugs Bunny. MiniMax surely understands who the big Hollywood studios are because their own advertising refers to Hollywood studios and uses their characters. *See* Compl., ¶ 1, 9-11, 169-185. The Complaint also shows that Hailuo AI has created and distributed an endless stream of

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

infringing reproductions and derivatives of Plaintiffs' works directly to consumers in the United States.  The harm to Plaintiffs in the United States caused by SXJT's conduct was readily foreseeable.  *Will Co.*, 47 F.4th at 927 (explaining "it's hard to see how Defendants could have failed to anticipate the harm that occurred in the forum" when the defendants "actively appealed to a U.S. audience, knew that a significant number of people in the United States were actually viewing the website, and were put on notice that they were hosting infringing content when [plaintiff] sent them a takedown notice").  Consequently, the third factor of the *Calder* effects test supports this Court's exercise of personal jurisdiction.

**C.      The Remaining Factors Favor the Exercise of Specific Jurisdiction Over SXJT.**

The last two factors of the Rule 4(k)(2) personal jurisdiction analysis are whether the claims arise out of or relate to the defendant's forum-related activities and whether the court's exercise of jurisdiction is reasonable.  *Id.* at 922.  As discussed above, Plaintiffs' copyright claims arise from SXJT's willful infringement of their copyrighted works in the United States, satisfying the second prong.

Once Plaintiffs have satisfied the first two prongs of the specific jurisdiction test, the burden shifts to Defendants to "present a compelling case that the exercise of jurisdiction would *not* be reasonable."  *Doe v. WebGroup Czech Republic, a.s.*, 93 F.4th 442, 457 (9th Cir. 2024), *overruled in part on other grounds*, *Briskin v. Shopify*, 135 F.4th 739 (9th Cir. 2025) (citation omitted).  SXJT's motion completely fails to present any evidence or argument that the exercise of jurisdiction would not be reasonable, let alone a compelling argument.  *See Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1071 (S.D. Cal. 2019) ("Defendant has not directly addressed this prong and thus fails to meet its burden to prove the unreasonableness of jurisdiction."); *Harman Int'l Indus., Inc. v. Jem Accessories, Inc.*, 2021 WL 3265013, at *5 (C.D. Cal. Apr. 8, 2021) (prong satisfied where

17

"Defendant puts forth no discernible argument, much less a 'compelling case,' that specific jurisdiction would not be reasonable or fair").[5]

Even if SXJT had addressed this prong, it could not show that the exercise of jurisdiction is unreasonable. Courts have held, for example, that jurisdiction is reasonable where the defendant "purposefully targeted American companies and their intellectual property." *Lang Van*, 40 F.4th at 1041. That reasoning holds true here. SXJT built a generative AI service that distributes infringing copies of Plaintiffs' works, which it offers to U.S. consumers and advertises to U.S. consumers using the very same copyrighted characters from Plaintiffs' works that its service deliberately infringes. The United States is the proper forum for Plaintiffs' claims based on this conduct. For this reason, once a defendant's minimum contacts with a forum have been established "often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Ayla*, 11 F.4th at 984 (quoting *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 114 (1987)). This Court's exercise of specific jurisdiction over SXJT therefore is entirely appropriate, and SXJT's motion should be denied.

## IV.    PLAINTIFFS' ALTERNATIVE REQUEST
## FOR JURISDICTIONAL DISCOVERY

Plaintiffs have overwhelmingly demonstrated that this Court may properly exercise personal jurisdiction over SXJT. In the unlikely event the Court determines that Plaintiffs have not made a prima facie showing of personal jurisdiction over SXJT, Plaintiffs respectfully request leave to conduct jurisdictional discovery. "A court may permit discovery to aid in determining whether it has personal jurisdiction." *EcoDisc Tech. AG*

---

[5] SXJT may not raise this new argument on reply because "[i]t is well accepted that raising of new issues and submission of new facts in reply brief is improper." *Schwartz v. Upper Deck Co.,* 183 F.R.D. 672, 682 (S.D. Cal. 1999) (quotations omitted); *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1027 (C.D. Cal. 2018) ("The new evidence presented in the Reply must be stricken.").

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

*v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1093 (C.D. Cal. 2010) (citation omitted).  Jurisdictional discovery "may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto v. Hansing,* 539 F.3d 1011, 1020 (9th Cir. 2008).  Here, Plaintiffs have already served requests for production of documents, interrogatories, and request for admission that relate to each defendant's operations in the United States and to the corporate structure and potential alter ego relationships of SXJT, Nanonoble, and MiniMax Group Inc.  Plaintiffs anticipate that this discovery will further confirm that SXJT is subject to this Court's jurisdiction.  Accordingly, if the Court has any doubts about Plaintiffs' prima facie showing on personal jurisdiction, the Court should allow Plaintiffs to continue to conduct jurisdictional discovery before ruling on this motion.

## V.    CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss for lack of personal jurisdiction.

Dated:  May 1, 2026                 JENNER & BLOCK LLP


By:  _____ */s/ David R. Singer* _____
                 David R. Singer
                 Julie A. Shepard
                 Lauren M. Greene

                 *Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

## LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs Disney Enterprises, Inc., Marvel Characters, Inc., MVL Film Finance LLC, Lucasfilm Ltd. LLC, Twentieth Century Fox Film Corporation, Universal City Studios Productions LLLP, DreamWorks Animation L.L.C., Warner Bros. Entertainment Inc., DC Comics, The Cartoon Network, Inc., Turner Entertainment Co., and Hanna-Barbera Productions Inc., certifies that this brief does not exceed 7,000 words, which complies with the word limit of the Court's September 23, 2025 Standing Order for Civil Cases Assigned to Judge Stanley Blumenfeld, Jr. (Dkt. No. 11).

Dated:  May 1, 2026                    JENNER & BLOCK LLP


                                       By:  _____ */s/ David R. Singer* _____
                                              David R. Singer
                                              Julie A. Shepard
                                              Lauren M. Greene

                                       *Attorneys for Plaintiffs*

20

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)