QUINN EMANUEL URQUHART &
 SULLIVAN, LLP
  Robert M. Schwartz (Bar No. 117166)
   robertschwartz@quinnemanuel.com
  Daniel C. Posner (Bar No. 232009)
   danposner@quinnemanuel.com
  Aaron Perahia (Bar No. 304554)
   aaronperahia@quinnemanuel.com
  Moon Hee Lee (Bar No. 318020)
   moonheelee@quinnemanuel.com
  Bradley Kahn (Bar No. 364637)
   bradleykahn@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Defendant Shanghai Xiyu
Jizhi Technology Co. Ltd.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DISNEY ENTERPRISES, INC., a Delaware corporation; UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, a Delaware limited liability limited partnership; WARNER BROS. ENTERTAINMENT INC., a Delaware corporation; MARVEL CHARACTERS, INC., a Delaware corporation; MVL FILM FINANCE LLC, a Delaware limited liability company; LUCASFILM LTD. LLC, a California limited liability company; TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware corporation; DC COMICS, a New York general partnership; THE CARTOON NETWORK, INC., a Delaware corporation; TURNER ENTERTAINMENT CO., a Delaware corporation; HANNA-BARBERA PRODUCTIONS, INC., a Delaware corporation; and DREAMWORKS | Case No. 2:25-cv-08768-SB-E **DEFENDANT SHANGHAI XIYU JIZHI TECHNOLOGY CO. LTD.'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2)** Date:     May 29, 2026 Time:     8:30 a.m. Place:    Courtroom 6C Judge:   Hon. Stanley Blumenfeld, Jr. Trial Date:     July 12, 2027 |

SXJT'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2)

ANIMATION L.L.C., a Delaware limited liability company,

          Plaintiffs,

    vs.

MINIMAX, a Chinese company; SHANGHAI XIYU JIZHI TECHNOLOGY CO. LTD., a Chinese limited company; NANONOBLE PTE. LTD., a Singaporean private limited company and DOES 1 through 20, inclusive,

          Defendants.

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................1

ARGUMENT.........................................................................................................2

I.    THE COURT MUST EVALUATE SXJT'S FORUM CONTACTS, NOT CONTACTS ATTRIBUTED TO "MINIMAX" ...................................2

II.   SXJT'S CONDUCT DOES NOT SHOW PURPOSEFUL DIRECTION........4

    A.    SXJT's Trademark Filings Do Not Establish Express Aiming. .............4

    B.    The Studios' Other Express Aiming Arguments Fail. ..........................6

    C.    "Foreseeable Harm" Does Not Substitute for Express Aiming. ...........10

III.  THE STUDIOS' COPYRIGHT CLAIMS DO NOT ARISE FROM OR RELATE TO SXJT'S TRADEMARK FILINGS.........................................11

IV.   EXERCISING JURISDICTION WOULD BE UNREASONABLE ............12

V.    THE COURT SHOULD DENY JURISDICTIONAL DISCOVERY............13

CONCLUSION ...................................................................................................13

CERTIFICATE OF L.R. 11-6.2 COMPLIANCE RE: WORD COUNT .................15

# TABLE OF AUTHORITIES

**Page**

## Cases

*Aether, LLC v. Unt Holdings, OU,*
    2022 WL 16554691 (C.D. Cal. Oct. 31, 2022)......................................................11

*Alhathloul v. DarkMatter Group,*
    795 F. Supp. 3d 1253 (D. Or. 2025)........................................................................6

*Asahi Metal Industry Co. v. Superior Court,*
    480 U.S. 102 (1987)...............................................................................................12

*Axiom Foods, Inc. v. Acerchem International, Inc.,*
    874 F.3d 1064 (9th Cir. 2017).................................................................................4

*Ayla, LLC v. Alya Skin Pty. Ltd.,*
    11 F.4th 972 (9th Cir. 2021)...............................................................................5, 8

*In re Baby Food Products Liability Litigation,*
    2025 WL 986959 (N.D. Cal. Apr. 2, 2025)..........................................................2, 7

*Blizzard Entertainment, Inc. v. Joyfun Inc Co.,*
    2020 WL 1972284 (C.D. Cal. Feb. 7, 2020) ..........................................................9

*Boschetto v. Hansing,*
    539 F.3d 1011 (9th Cir. 2008)...............................................................................13

*Briskin v. Shopify, Inc.,*
    135 F.4th 739 (9th Cir. 2025)................................................................................12

*Climax Portable Machhine Tools, Inc. v. Trawema GmbH,*
    2020 WL 1304487 (D. Or. Mar. 19, 2020).............................................................6

*Desire, LLC v. Manna Textiles, Inc.,*
    986 F.3d 1253 (9th Cir. 2021)................................................................................6

*DPR Construction, Inc. v. Anka (Cortez Hill) LLC,*
    2008 WL 11508492 (S.D. Cal. Mar. 27, 2008) ......................................................4

*EcoDisc Technology AG v. DVD Format/Logo Licensing Corp.,*
    711 F. Supp. 2d 1074 (C.D. Cal. 2010) ................................................................13

*Expensify, Inc. v. Swappoint AG*,
  2023 WL 6323103 (N.D. Cal. Sept. 28, 2023) ....................................................11

*Facebook, Inc. v. Sahinturk*,
  2022 WL 1304471 (N.D. Cal. May 2, 2022) .........................................................6

*Goes International, AB v. Dodur Ltd.*,
  2015 WL 5043296 (N.D. Cal. Aug. 26, 2015) ......................................................9

*Intent Drivers, Inc. v. Primesolarquotes*,
  2022 WL 17080203 (C.D. Cal. Aug. 4, 2022)......................................................10

*Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*,
  140 F.4th 1304 (11th Cir. 2025)...........................................................................11

*Lang Van, Inc. v. VNG Corp.*,
  40 F.4th 1034 (9th Cir. 2022)...........................................................................5, 9

*LHF Products Inc. v. Doe 1*,
  736 F. App'x 688 (9th Cir. 2018)...........................................................................6

*LTN Media LLC v. Bihaco Communication Trading & Services Corp.*,
  2025 WL 3190869 (C.D. Cal. Sept. 30, 2025) ......................................................5

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*,
  647 F.3d 1218 (9th Cir. 2011)...............................................................................8

*Mewawalla v. Middleman*,
  601 F. Supp. 3d 574 (N.D. Cal. 2022)................................................................10

*Monster Cable Products, Inc. v. Euroflex S.R.L.*,
  642 F. Supp. 2d 1001 (N.D. Cal. 2009)...............................................................12

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004)...............................................................................12

*Terracom v. Valley National Bank*,
  49 F.3d 555 (9th Cir. 1995).................................................................................13

*Walden v. Fiore*,
  571 U.S. 277 (2014).........................................................................................2, 7

*Will Co., Ltd. v. Lee*,
  47 F.4th 917 (9th Cir. 2022)...........................................................................8, 10

*X Corp. v. Center for Countering Digital Hate Ltd.*,
     724 F. Supp. 3d 921 (N.D. Cal. 2024)................................................................6

*Yamashita v. LG Chem, Ltd.*,
     62 F.4th 496 (9th Cir. 2023)...........................................................................11

### Statutes

15 U.S.C. § 1055..............................................................................................3, 5

17 U.S.C. § 504 ...............................................................................................6, 7

## **INTRODUCTION**

The Court should dismiss SXJT for lack of personal jurisdiction. It is undisputed that SXJT has no offices, no servers, no assets, and no revenue in the U.S. It does not operate the Hailuo AI tool in the U.S. Nanonoble—a separate entity, already a Defendant in this case—operates the service, signed the Terms of Service, distributes the Hailuo AI app through the U.S. app stores, and processes U.S. payments. The only U.S.-directed acts that the Studios tie to SXJT by name are trademark filings for the mark "MiniMax." That is not enough. A trademark filing standing alone does not establish purposeful direction, and in any event the Studios' copyright claims neither arise from nor relate to one. The Xue Declaration confirms each of those facts under oath. The Studios offer no contrary evidence.

The Studios' opposition rests on a single theory: They treat every act done under the "MiniMax" brand as an act of SXJT. That fails. "MiniMax" is a brand used across the MiniMax Group. Even Nanonoble displays the MiniMax logo on Hailuo AI outputs and throughout the U.S.-facing platform. But due process requires the Court to evaluate SXJT's contacts on their own—not under a collective brand label.

*First*, a shared brand does not erase the line between affiliated companies. Multiple MiniMax Group entities use the "MiniMax" brand, and Nanonoble itself uses it on the U.S.-facing service. None of that makes SXJT the actor behind Nanonoble's U.S. operations.

*Second*, a trademark filing standing alone does not establish purposeful direction. The Ninth Circuit has never so held. The Studios' lead authority is dicta in a footnote. The Studios' other cases each turned on the defendant's own U.S.-facing channels: its own website, its own app, its own contracts, its own ads. SXJT operates none in the U.S.

*Third*, even if the trademark filings supplied minimum contacts, the Studios' copyright claims neither arise from nor relate to them.  Every trademark-jurisdiction case that the Studios cite involved a trademark claim—not something unrelated.

*Fourth*, exercising jurisdiction over SXJT would be unreasonable.  SXJT operates exclusively in China.  Nanonoble is already a Defendant in this case, making the remaining reasonableness factors neutral at best.

*Fifth*, the Studios identify no controverted fact that jurisdictional discovery could resolve.  They offer only a hunch against sworn evidence.  That is not enough.

## ARGUMENT

### I.    THE COURT MUST EVALUATE SXJT'S FORUM CONTACTS, NOT CONTACTS ATTRIBUTED TO "MINIMAX"

The Studios disregard corporate structure by equating the MiniMax brand with SXJT.  Due process restricts jurisdiction to "contacts that the 'defendant himself' creates with the forum State."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  SXJT challenged the Studios' conclusory allegations seeking to impute Nanonoble's contacts to SXJT.  Mot. 7-8 (citing Compl. ¶¶ 33-34).  The Studios do not defend them.  *See generally* Opp. 4-6.  Instead, they argue that "MiniMax" is SXJT's fictitious business name, so that all acts conducted under the "MiniMax" brand are SXJT's conduct.  Opp. 4-6.  This argument conflates a group brand with a separate entity.

"MiniMax" is a brand name used for AI products and services across the MiniMax Group.  Xue Decl. ¶ 7.  The MiniMax platform encompasses products beyond Hailuo AI, including LLMs and speech generation models.  *Id.* ¶ 5.  And Nanonoble, not SXJT, operates Hailuo AI in the U.S.  *Id.* ¶ 6.  Shared branding does not establish jurisdiction over an affiliate that lacks forum contacts.  *In re Baby Food Prods. Liab. Litig.*, 2025 WL 986959, at *6 (N.D. Cal. Apr. 2, 2025) (holding that shared branding does not establish personal jurisdiction over a related entity).  Each of the Studios' other arguments fails.

***First***, the Studios cannot use the Statement of Use to show that SXJT operates in the U.S.  They argue that it confirms that "MiniMax is the business name that SXJT [uses] in connection with the infringing Hailuo AI service."  Opp. 5.  But the Statement of Use is a form that allows an applicant to file based on use by "the applicant" or "the applicant's related company, licensee, or predecessor in interest."  Greene Decl., Ex. 1 at 10.  Nanonoble's use of the MiniMax brand in the U.S. satisfies this requirement.  15 U.S.C. § 1055.

The Studios insert "[i.e., SXJT's]" after the Statement of Use's reference to "the client's website."  Opp. 5.  But the form does not say "SXJT's website."  Greene Decl., Ex. 1 at 10.  And SXJT does not own or control minimax.io or hailuoai.video.  Xue Decl. ¶ 13.  The Studios also point to "© 2026 MiniMax" as proof that SXJT seeks U.S. copyright protection.  Opp. 5.  But a copyright notice is not a legal requirement for protection; the notice confers no rights.  And one bearing a group brand name does not identify which entity holds the copyright.

***Second***, the Studios misstate SXJT's motion as conceding that all MiniMax-branded conduct is SXJT's.  Opp. 6.  The Studios alleged that the "MiniMax" defendant is either "a privately held Chinese company" or "a subsidiary, division, or d/b/a of defendant [SXJT]."  Compl. ¶ 32.  SXJT also assumed, for argument's sake, that if "MiniMax" were SXJT's fictitious business name, as the Studios alternatively alleged, then the "MiniMax" defendant could not face jurisdiction as an independent entity and should be dismissed (and was ultimately dismissed).  Mot. 4-5.  That assumption did not concede that every act by every entity using the MiniMax brand counts as SXJT's act.  The Studios conflate the named "MiniMax" defendant with the MiniMax brand.  Other MiniMax Group entities use that brand, but none operates as SXJT's fictitious business name.  *See* Xue Decl. ¶¶ 3-4, 7.

***Third***, the Studios cannot reach SXJT by process of elimination.  Opp. 6.  The Studios argue that SXJT is "necessarily" responsible for any MiniMax-branded activity because Nanonoble "contracts in its own name," "files trademarks in its

own name," and appears on U.S. app stores under its own name. *Id.* The premise is wrong. Nanonoble also operates under the MiniMax brand—it distributes the Hailuo AI tool and displays the MiniMax mark throughout the platform. *See* Xue Decl. ¶¶ 6-7. Nanonoble's use of its own name for contracting and trademark filings does not make SXJT the default actor for everything bearing the MiniMax label.

**Fourth**, the Studios' fictitious-name theory fails. Opp. 5-6. The fictitious-name doctrine holds entities accountable for business they conduct under an alias. *DPR Constr., Inc. v. Anka (Cortez Hill) LLC*, 2008 WL 11508492, at *3, 6 (S.D. Cal. Mar. 27, 2008) (Opp. 5-6) (exercising jurisdiction where two Australian defendants—the only entities behind the "APG" alias—maintained offices in California, managed three real estate projects there, and negotiated the contracts at issue in person). Here, multiple entities under the MiniMax Group umbrella use the MiniMax mark. Xue Decl. ¶ 7. Unlike the *DPR* defendants, SXJT maintains no offices, employees, or assets in the U.S. and does not sell, market, or advertise here. Xue Decl. ¶¶ 8-9. Nanonoble performed the U.S.-facing activities that the Studios attribute to "MiniMax."

## II.    SXJT'S CONDUCT DOES NOT SHOW PURPOSEFUL DIRECTION

The Studios fail to show that SXJT directed any conduct at the U.S. Purposeful direction requires: (1) an intentional act, (2) expressly aimed at the forum, and (3) causing harm that the defendant knew was likely to be suffered there. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). The only SXJT conduct that the Studios identify by name are U.S. trademark filings. The rest belongs to another entity or rests on speculation.

### A.    SXJT's Trademark Filings Do Not Establish Express Aiming.

The Ninth Circuit has never held that trademark filings alone establish express aiming. The Studios argue that trademark applications are "compelling evidence" of purposeful direction. Opp. 8. But the dictum on which they rely does

not support their arguments. *Id.* (citing *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972 (9th Cir. 2021)).  A footnote in *Ayla* stated that a trademark application "might be considered compelling evidence."  *Ayla*, 11 F.4th at 982 n.4.  But the court never applied that reasoning because the defendant withdrew the trademark application. *Id.*  Jurisdiction in *Ayla* instead turned on extensive U.S. contacts that bear no resemblance to SXJT here: a U.S. fulfillment center in Idaho, advertising directed at "USA BABES," about ten percent of total sales to the U.S., and claims of FDA approval.  *Id.* at 980-83.

The Studios argue that post-*Ayla* caselaw confirms that trademark filings alone satisfy express aiming.  Opp. 9-10.  But their lead authority found express aiming only because the defendant went beyond registration to send DMCA takedown notices, file counter-notifications consenting to U.S. jurisdiction, and enforce its registrations against third parties.  *LTN Media LLC v. Bihaco Commc'n Trading & Servs. Corp.*, 2025 WL 3190869, at *5 (C.D. Cal. Sept. 30, 2025) (Opp. 9-10) (requiring "conduct directly targeting the forum" beyond the trademark registration itself).  In another cited case, the defendant filed a trademark application, but also released its app in the U.S., contracted with U.S. studios, uploaded the plaintiff's copyrighted songs, and refused to geoblock U.S. users while selectively blocking content from certain U.S. studios.  *Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1042 (9th Cir. 2022) (Opp. 7-8).  SXJT did none of these things.  It filed trademark applications.  Nanonoble—not SXJT—released the app, contracted with U.S. platforms, and operated the U.S.-facing service.

The Statement of Use does not supply the missing "something more."  The law allows trademark applicants to file based on use by related companies, licensees, or predecessors in interest.  15 U.S.C. § 1055.  SXJT does not admit through the Statement of Use that it—as opposed to one of its related companies, licensees, or predecessors in interest—operates a U.S. business.  Nanonoble is such a related company that operates a U.S. business.

**B.     The Studios' Other Express Aiming Arguments Fail.**

None of the other conduct that the Studios allege supports jurisdiction.  The Studios rely on conduct misattributed to SXJT, third-party activity, or speculation.

***First***, the Studios argue that SXJT developed and trained the Hailuo AI model by copying the Studios' works.  Opp. 11.  They tie development and training to the U.S. by arguing that it is "highly likely" that SXJT scraped U.S. websites.  *Id.*  That is speculation, not a factual averment.  And each of the Studios' cited scraping cases involved a defendant that deliberately targeted an identified computer belonging to an identified plaintiff in a known forum—not generalized data collection from unspecified Internet sources.  *See* Opp. 7, 11 (citing *Alhathloul v. DarkMatter Grp.*, 795 F. Supp. 3d 1253, 1270-71 (D. Or. 2025) (finding jurisdiction based on documented targeting of the plaintiff's iPhone in the forum); *Facebook, Inc. v. Sahinturk*, 2022 WL 1304471, at *4 (N.D. Cal. May 2, 2022) (finding jurisdiction based on automated scraping commands directed at the plaintiff's California servers); *Climax Portable Mach. Tools, Inc. v. Trawema GmbH*, 2020 WL 1304487, at *7 (D. Or. Mar. 19, 2020) (finding jurisdiction based on undisputed access to the plaintiff's Oregon server)).  The Studios identify nothing comparable.  Ingesting data from unspecified Internet sources does not "expressly aim" at a particular forum.  *See, e.g.*, *X Corp. v. Ctr. for Countering Digital Hate Ltd.*, 724 F. Supp. 3d 921, 940 (N.D. Cal. 2024) ("The mere location of servers cannot establish personal jurisdiction.") (citing cases).

***Second***, the Studios argue that SXJT is "jointly responsible" for making the Hailuo AI tool available in the U.S. because SXJT developed the underlying AI model and because the Hailuo AI tool's outputs bear the MiniMax logo.  Opp. 12.  The cases the Studios cite for that proposition address statutory damages under 17 U.S.C. § 504(c)(1), not personal jurisdiction.  *See* Opp. 12 (citing *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1263 (9th Cir. 2021) (apportioning statutory damages between upstream and downstream infringers under § 504(c)(1)); *LHF*

*Prods. Inc. v. Doe 1*, 736 F. App'x 688, 690-91 (9th Cir. 2018) (applying § 504(c)(1) to joint infringers of the same work)).  Neither holds that joint-tortfeasor liability creates minimum contacts.  Due process requires that the jurisdictional relationship "arise out of contacts that the defendant himself creates with the forum State."  *Walden*, 571 U.S. at 284 (citation omitted).

The Studios' factual predicates fare no better.  SXJT develops AI models in Shanghai.  Xue Decl. ¶¶ 5, 9.  Model training in China is research and development performed abroad.  It is not conduct expressly aimed at the U.S.  Nanonoble operates the platform, generates the outputs, applies the MiniMax logo, and processes payments.  *Id.* ¶ 6.  Nanonoble's distribution of the model to U.S. consumers is Nanonoble's forum contact alone.  A shared brand on a product distributed by one subsidiary does not establish that another subsidiary worked "in concert" with the distributor.  *Baby Food*, 2025 WL 986959, at *6 (holding that "shared branding and marketing materials … do not suffice to establish personal jurisdiction").

*Third*, the Studios argue that SXJT distributes AI models to U.S. consumers through APIs on third-party websites because the Statement of Use specimen "confirms that [SXJT] is behind MiniMax's API offerings."  Opp. 13.  That theory rests on the same attribution error.  The specimen displays an API pricing page on platform.minimax.io.  Greene Decl., Ex. 1 at 6, 8.  The press release the Studios cite appears on minimax.io.  *Id.*, Ex. 9 at 2.  SXJT does not own or control either website.  Xue Decl. ¶ 13.  A third party's independent decision to distribute an SXJT-developed model in the U.S. is not SXJT's forum-directed conduct.  *See Walden*, 571 U.S. at 284.

*Fourth*, every "advertising" and "conference" contact that the Studios identify involves a channel SXJT does not control.  They point to social media posts featuring Hailuo AI and the Studios' characters, news stories about four U.S. conferences on minimax.io, and a "San Francisco" location field on MiniMax-

7

branded X accounts.  Opp. 14.  The social media accounts are listed as "HailuoAI (MiniMax)"—*not* "HailuoAI (SXJT)."  Compl. ¶ 169; Greene Decl., Exs. 4-7.  The event organizers reference the MiniMax brand, not SXJT.  Greene Decl., Exs. 18-21.  SXJT does not manage social media accounts directed at U.S. consumers, does not advertise in the U.S., does not host or fund U.S. events, and has no presence in San Francisco or anywhere else in the U.S.  Xue Decl. ¶¶ 6, 8-9, 13-14.  Nanonoble manages all customer-facing activity for Hailuo AI in the U.S.  *Id.* ¶ 6.

The Studios' cases all involved a defendant itself targeting U.S. consumers through *its own* channels.  Opp. 14 (citing *Will Co., Ltd. v. Lee*, 47 F.4th 917, 924-25 (9th Cir. 2022) (finding express aiming where the defendant operated its own U.S.-targeted website using U.S.-based servers and CDN services); *Ayla*, 11 F.4th at 980-81 (finding the defendant's own ads addressed to "USA BABES" reinforced purposeful direction); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229-30 (9th Cir. 2011) (finding express aiming where the defendant exploited the California market through its own website)).  The Studios do not allege that SXJT did any of these things.

*Fifth*, the Studios argue that conduct SXJT attributes to Nanonoble is in fact SXJT's.  Opp. 14-15.  SXJT showed that Google Play identifies "NANONOBLE PTE. LTD." as the registered developer, with a Singapore address.  Mot. 6-7; Xue Decl. ¶ 11.  The Studios dispute this.  They claim that Google "actually identifies MiniMax AI (i.e., SXJT) as the developer with no mention of Nanonoble."  Opp. 15.  That is incorrect.  The Google Play Store page that the Studios cite lists "NANONOBLE PTE. LTD." as the registered developer under the "App support" tab, as shown below:

SXJT'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2)



Declaration of Sheng Jingyuan filed May 15, 2026 ("Sheng Decl."), Ex. A.

The "MiniMax AI" name on the Google Play Store is a brand display name that appears alongside Nanonoble as the registered developer.  Sheng Decl., Ex. A.  The listing does not mention SXJT.  *Id.*  SXJT did not upload, distribute, or manage the Hailuo AI app.  Xue Decl. ¶ 6.

The Studios' cited app-store cases each involved a defendant that itself uploaded and distributed the infringing content.  Opp. 15 (citing *Lang Van*, 40 F.4th at 1042 (finding purposeful direction where the defendant itself released its music app on the App Store and Google Play, chose not to geoblock U.S. users, and contracted with U.S. businesses); *Goes Int'l, AB v. Dodur Ltd.*, 2015 WL 5043296, at *2, 9-10 (N.D. Cal. Aug. 26, 2015) (finding express aiming where the defendant was the listed developer, uploaded infringing games to the App Store 33 times, and selected the U.S. as a distribution market); *Blizzard Ent., Inc. v. Joyfun Inc Co.*, 2020 WL 1972284, at *1-2, 5-6 (C.D. Cal. Feb. 7, 2020) (finding purposeful

availment where the defendants uploaded the infringing game to Google Play and the Microsoft Store, sold virtual currency to U.S. customers, and advertised on Facebook)).  Unlike those cases, Nanonoble uploaded Hailuo AI to Google Play, entered the developer agreements, and manages the app's distribution.  SXJT did none of this.

The Studios argue that Nanonoble's Terms of Service bind SXJT through a generic "affiliates" clause.  Opp. 15.  SXJT is not a party to those terms.  Xue Decl. ¶ 10.  The Terms identify only "Nanonoble Pte. Ltd." as the contracting party.  Xue Decl., Ex. A.  A forum-selection clause does not bind a non-signatory that did not consent to jurisdiction.  *Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 589-90 (N.D. Cal. 2022) (declining to enforce a forum-selection clause against a non-signatory because it "did not consent to the jurisdiction of California courts").  The Studios' sole supporting case confirms the deficiency.  *See* Opp. 15 (citing *Intent Drivers, Inc. v. Primesolarquotes*, 2022 WL 17080203, at *5 (C.D. Cal. Aug. 4, 2022) (finding purposeful availment where the defendant itself drafted and posted terms of use on its own website, selecting California law, requiring all claims to be resolved in California courts, and directing a privacy notice at California residents)).  SXJT did not draft Nanonoble's terms, did not post them on its own website, and did not select California as a forum.

### C.   <u>"Foreseeable Harm" Does Not Substitute for Express Aiming.</u>

The Studios argue that SXJT knew harm was likely because the Studios own well-known movies and television franchises and MiniMax-branded advertising features the Studios' characters.  Opp. 16-17.  But foreseeable harm is not a substitute for express aiming.  The Studios' cited case requires a defendant's forum-directed conduct: actively appealing to a U.S. audience, knowing many U.S. users view the site, and receiving notice of infringing content.  *Will Co.*, 47 F.4th at 927.  Nanonoble, not SXJT, manages all customer-facing activity for the Hailuo AI tool in

the U.S.  Xue Decl. ¶¶ 6, 13.  The Studios identify no SXJT conduct that satisfies the test.

## III.    THE STUDIOS' COPYRIGHT CLAIMS DO NOT ARISE FROM OR RELATE TO SXJT'S TRADEMARK FILINGS

Even if the trademark filings showed purposeful direction, the Studios' copyright claims bear no connection to them.  Specific jurisdiction requires that the claims "arise from" the defendant's forum contacts—meaning those contacts are a but-for cause of the injury—or "relate to" them—meaning "similar injuries will tend to be caused by those contacts" or that the defendant "should have foreseen the risk that its contacts might cause injuries like that of the plaintiff." *Yamashita v. LG Chem, Ltd*., 62 F.4th 496, 504-05 (9th Cir. 2023) (citation omitted).  The Studios satisfy neither standard.

The Studios' claims do not "arise out of" SXJT's trademark filings.  The Studios allege that the Hailuo AI tool reproduces copyrighted characters when subscribers submit text prompts.  Compl. ¶¶ 1, 6-8, 116-167.  SXJT's trademark filings did not cause those reproductions.  The Studios would suffer the same alleged injuries if SXJT had never filed a single trademark application.

Nor do the claims "relate to" SXJT's trademark filings.  A trademark application protects a brand name.  It does not copy, reproduce, distribute, or display copyrighted works.  Copyright infringement through AI-generated outputs is not the type of injury that "tend[s] to be caused by" a trademark filing.  *Yamashita*, 62 F.4th at 505.

The Studios' cited cases expose this gap.  Every trademark-jurisdiction case that the Studios cite involved ***claims about a trademark***—infringement, unfair competition, or cancellation.  *See* Opp. 8-10 (citing *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, 140 F.4th 1304, 1311-14 (11th Cir. 2025) (trademark infringement claims); *Expensify, Inc. v. Swappoint AG*, 2023 WL 6323103, at *1 (N.D. Cal. Sept. 28, 2023) (declaratory judgment of noninfringement); *Aether, LLC*

*v. Unt Holdings, OU*, 2022 WL 16554691, at *2 (C.D. Cal. Oct. 31, 2022) (trademark infringement and related claims); *Monster Cable Prods., Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1005, 1010 (N.D. Cal. 2009) (trademark dispute)).  In each, the trademark filing both established purposeful direction ***and*** gave rise to the claims.  That alignment is absent here.  The Studios do not sue to cancel the MiniMax mark.  They do not allege that SXJT's trademark filings infringed their copyrights.  The relatedness prong independently bars jurisdiction.

## IV.    <u>EXERCISING JURISDICTION WOULD BE UNREASONABLE</u>

The burden to show that jurisdiction is unreasonable shifts to SXJT only after the Studios satisfy the first two prongs.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (requiring plaintiff to first show "purposeful availment" and nexus between the claims and forum contacts).  The Studios satisfy neither.  They argue that SXJT waived any reasonableness argument by not raising it in its opening motion.  Opp. 18 n.5.  But SXJT had no obligation to address a burden that never shifted to it.  Neither of the Studios' cited cases involved the personal jurisdiction burden-shifting framework, and neither holds that a defendant waives an argument it had no burden to raise in the first instance.  *See id.*

Even if the burden shifted, the reasonableness factors favor SXJT or are neutral.  *See Briskin v. Shopify, Inc.*, 135 F.4th 739, 761 (9th Cir. 2025) (listing seven factors governing reasonableness).  SXJT has no offices, employees, assets, or revenue in the U.S. and does not market or sell any product to U.S. consumers.  Xue Decl. ¶¶ 8-9.  Compelling a Chinese company with no U.S. presence to defend copyright claims in California imposes a substantial burden.  *See Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 114 (1987) (recognizing "unique burdens placed upon one who must defend oneself in a foreign legal system").  The remaining factors are neutral at best: the Studios can obtain full relief against Nanonoble, which operates the Hailuo AI service in the U.S., processes payments, and distributes outputs to U.S. subscribers.  Xue Decl. ¶ 6.  The forum's interest, judicial

efficiency, and the Studios' interest in convenient relief are all satisfied without SXJT.

## V. THE COURT SHOULD DENY JURISDICTIONAL DISCOVERY

Jurisdictional discovery is not warranted where the request rests on "little more than a hunch that it might yield jurisdictionally relevant facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). Nor is it warranted where the plaintiff's claim of jurisdiction is "attenuated and based on bare allegations in the face of specific denials made by defendants." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995). Both cases the Studios cite for jurisdictional discovery denied the request. *See* Opp. 19 (citing *Boschetto*, 539 F.3d at 1020; *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1093 (C.D. Cal. 2010) (denying discovery where the plaintiff failed to show how additional discovery would contradict essential facts in the defendant's declaration)).

The Studios fail the same standards. The Xue Declaration—signed under penalty of perjury and supported by corporate records—confirms that SXJT has no U.S. presence, does not operate Hailuo AI or its social media accounts, does not process U.S. payments, and does not control Nanonoble. Xue Decl. ¶¶ 6, 8-16, Exs. A-D. The Studios do not identify a single fact they expect discovery to uncover. They say only that they "anticipate" that discovery into "corporate structure and alter ego relationships" will "further confirm" jurisdiction. Opp. 19. That is a hunch against sworn evidence. *Boschetto*, 539 F.3d at 1020.

## CONCLUSION

The Court should dismiss Defendant SXJT for lack of personal jurisdiction.

Dated:  May 15, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART
&amp; SULLIVAN, LLP
Robert M. Schwartz
Daniel C. Posner
Aaron Perahia
Moon Hee Lee
Bradley Kahn

By: _____

Robert M. Schwartz

*Attorneys for Defendant SXJT*

SXJT'S Reply In Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)

**CERTIFICATE OF L.R. 11-6.2 COMPLIANCE RE: WORD COUNT**

The undersigned, counsel of record for SXJT, certifies that this brief contains 3,961 words, which complies with the word limit of the Court's September 23, 2025 Standing Order for Civil Cases Assigned to Judge Stanley Blumenfeld, Jr. (Dkt. No. 11).

Dated:  May 15, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART
&  SULLIVAN, LLP
Robert M. Schwartz
Daniel C. Posner
Aaron Perahia
Moon Hee Lee
Bradley Kahn

By: _____
Robert M. Schwartz
*Attorneys for Defendant SXJT*

15

Case No. 2:25-cv-08768-SB-E

SXJT's Reply In Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)