QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Robert M. Schwartz (Bar No. 117166)
    robertschwartz@quinnemanuel.com
  Daniel C. Posner (Bar No. 232009)
    danposner@quinnemanuel.com
  Aaron Perahia (Bar No. 304554)
    aaronperahia@quinnemanuel.com
  Moon Hee Lee (Bar No. 318020)
    moonheelee@quinnemanuel.com
  Bradley Kahn (Bar No. 364637)
    bradleykahn@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Defendant
Nanonoble Pte. Ltd.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DISNEY ENTERPRISES, INC., a Delaware corporation; UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, a Delaware limited liability limited partnership; WARNER BROS. ENTERTAINMENT INC., a Delaware corporation; MARVEL CHARACTERS, INC., a Delaware corporation; MVL FILM FINANCE LLC, a Delaware limited liability company; LUCASFILM LTD. LLC, a California limited liability company; TWENTIETH CENTURY FOX FILM CORPORATION, a Delaware corporation; DC COMICS, a New York general partnership; THE CARTOON NETWORK, INC., a Delaware corporation; TURNER ENTERTAINMENT CO., a Delaware corporation; HANNA-BARBERA PRODUCTIONS, INC., a Delaware corporation; and DREAMWORKS | Case No. 2:25-cv-08768-SB-E **DEFENDANT NANONOBLE PTE. LTD.'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES** Date:       May 29, 2026 Time:       8:30 a.m. Place:      Courtroom 6C Judge:     Hon. Stanley Blumenfeld, Jr. Trial Date:      July 12, 2027 |

ANIMATION L.L.C., a Delaware limited liability company,

Plaintiffs,

vs.

MINIMAX, a Chinese company; SHANGHAI XIYU JIZHI TECHNOLOGY CO. LTD., a Chinese limited company; NANONOBLE PTE. LTD., a Singaporean private limited company and DOES 1 through 20, inclusive,

Defendants.

REPLY ISO MOTION TO DISMISS DEFENDANT NANONOBLE PURSUANT TO FED. R. CIV. P. 12(b)(6)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT..........................................................................................................1

I.    THE STUDIOS HAVE NOT CURED THEIR FAILURE TO ALLEGE COPYRIGHTABLE AND REGISTERED CHARACTERS .........................1

    A.    Labels Like "Iconic" And "Distinctive" Are Not Legally Meaningful Allegations of Protectable Traits.......................................1

    B.    The Studios Still Do Not Link Registrations To Character Traits..........3

II.    THE DIRECT INFRINGEMENT CLAIM REMAINS DEFICIENT..............4

    A.    The Training Allegations Rest On Speculation. ....................................4

    B.    The Output Allegations Are Neither Actionable Nor Sufficient. ...........6

        1.    The Studios Do Not Dispute That They Created The Outputs At The Heart of This Case. .............................................6

        2.    The Remaining Output Allegations Do Not Plausibly Allege Nanonoble's Volitional Conduct. ..................................7

III.    THE SECONDARY INFRINGEMENT CLAIM FARES NO BETTER ........8

    A.    The Studios Still Cannot Allege Third-Party Direct Infringement.........8

    B.    The Studios Satisfy Neither Prong Of Vicarious Liability....................9

        1.    Neither Filtering Nor Contractual Relationships Establish A Right To Control Infringement.................................................9

        2.    Rebranding A Flat Fee As A "Draw" Does Not Create A Direct Financial Benefit. ......................................................11

    C.    The Studios Fail To Sufficiently Plead Inducement Under *Cox*. .........12

CONCLUSION ....................................................................................................13

CERTIFICATE OF L.R. 11-6.2 COMPLIANCE RE: WORD COUNT .................15

# TABLE OF AUTHORITIES

**Page**

## Cases

*Advance Local Media LLC v. Cohere Inc.*,
   2025 WL 3171892 (S.D.N.Y. Nov. 13, 2025)......................................................9

*Atlantic Recording Corp. v. Howell*,
   554 F. Supp. 2d 976 (D. Ariz. 2008) ................................................................6

*Biani v. Showtime Networks, Inc.*,
   2024 WL 6836918 (C.D. Cal. Mar. 29, 2024) ...................................................3

*BMI v. QM Entertainment*,
   2026 WL 972408 (W.D. Wash. Apr. 10, 2026).................................................11

*Concord Music Group, Inc. v. X Corp.*,
   2024 WL 945325 (M.D. Tenn. Mar. 5, 2024) ....................................................4

*Cox Communications, Inc. v. Sony Music Entertainment*,
   146 S. Ct. 959 (2026).................................................................................12, 13

*Crunchyroll, Inc. v. Pledge*,
   2014 WL 1347492 (N.D. Cal. Mar. 31, 2014)...................................................5

*Daniels v. Walt Disney Co.*,
   958 F.3d 767 (9th Cir. 2020)......................................................................2, 3

*David v. CBS Interactive Inc.*,
   2012 WL 12884914 (C.D. Cal. Jul. 13, 2012) ................................................10

*Facebook Inc. v. Namecheap Inc.*,
   2020 WL 6585534 (D. Ariz. Nov. 10, 2020).....................................................5

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
   76 F.3d 259 (9th Cir. 1996)...........................................................................10

*Fox Broadcasting Co. v. Dish Network, L.L.C.*,
   747 F.3d 1060 (9th Cir. 2014).........................................................................7

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005).........................................................................6

REPLY ISO MOTION TO DISMISS DEFENDANT NANONOBLE PURSUANT TO FED. R. CIV. P. 12(b)(6)

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005)..................................................................................12, 13

*Microsoft Corp. v. Rivera*,
    2019 WL 1641349 (C.D. Cal. Apr. 16, 2019) ....................................................6

*New York Times Co. v. Microsoft Corp.*,
    777 F. Supp. 3d 283 (S.D.N.Y. 2025) ..........................................................4, 9

*Perfect 10, Inc. v. Amazon.com*,
    508 F.3d 1146 (9th Cir. 2007)........................................................................10

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007)........................................................................11

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017)...............................................................4, 5, 7, 11

*Perfect 10, Inc. v. Visa International Servivce Association*,
    494 F.3d 788 (9th Cir. 2007)..........................................................................11

*Perfect 10, Inc. v. Yandex N.V.*,
    962 F. Supp. 2d 1146 (N.D. Cal. 2013)............................................................5

*Ryan v. CARL Corp.*,
    23 F. Supp. 2d 1146 (N.D. Cal. 1998)..............................................................6

*Shropshire v. Canning*,
    809 F. Supp. 2d 1139 (N.D. Cal. 2011).............................................................5

*Siegel v. Warner Bros. Entertainment Inc.*,
    690 F. Supp. 2d 1048 (C.D. Cal. 2009) ............................................................3

*Sound N Light Animatronics Co. v. Cloud B, Inc.*,
    2017 WL 3081685 (C.D. Cal. Apr. 7, 2017) .....................................................5

*Spanski Enterprises v. Telewizja Polska, S.A.*,
    883 F.3d 904 (D.C. Cir. 2018) .........................................................................5

*Summit Kaiju LLC v. Legend Pictures, LLC*,
    2022 WL 2235460 (C.D. Cal. Apr. 12, 2022) ...............................................3, 4

*U.S. v. Bestfoods*,
    524 U.S. 51 (1998)...........................................................................................5

REPLY ISO MOTION TO DISMISS DEFENDANT NANONOBLE PURSUANT TO FED. R. CIV. P. 12(b)(6)

*VHT, Inc. v. Zillow Group, Inc.*,
    918 F.3d 723 (9th Cir. 2019) .......................................................................... 7, 10

**Statutes**

17 U.S.C. § 103 ................................................................................................... 3

REPLY ISO MOTION TO DISMISS DEFENDANT NANONOBLE PURSUANT TO FED. R. CIV. P. 12(b)(6)

## **INTRODUCTION**

The Studios' Opposition does not overcome the Complaint's deficiencies identified in the Motion.  The Court should dismiss it, with prejudice.

On copyrightability, the Studios focus on a select few characters that courts have held protectable.  Yet they ignore the dozens for which they allege no protectable traits or allege only conclusory labels or generic archetypes.  For at least 41 of the characters at issue, the Studios fail to plausibly allege each element of *Towle*'s "especially distinctive" standard.  And the Studios have not linked any character or its traits to any copyright registration.

On direct infringement, the Studios fail to revive either their training or output theories.  On training, they identify no act of scraping, copying, or model development in the U.S.—only speculation that scraping "highly likely" touched U.S. servers.  That's not sufficient.  On outputs, they do not deny that they created the 52 outputs at the heart of their case.  And their basis for volitional conduct collapses because the users—not Nanonoble—select the content of each output.

On secondary infringement, the Studios point to nine third-party social media posts and the 52 outputs that they manufactured.  Their vicarious liability theory shows neither control over users' prompts nor a causal link between infringement and revenue.  And their inducement theory connects no alleged "promotional" act, viable or not, to any act of third-party infringement.

## **ARGUMENT**

**I.    THE STUDIOS HAVE NOT CURED THEIR FAILURE TO ALLEGE COPYRIGHTABLE AND REGISTERED CHARACTERS**

**A.    Labels Like "Iconic" And "Distinctive" Are Not Legally Meaningful Allegations of Protectable Traits.**

The Studios do not cure the copyrightability deficiencies for at least 41 of the characters.  The Studios devote most of their argument to a handful of characters that courts have found protectable.  Opp. 4-6.  Nanonoble does not challenge those

1

characters.  Nanonoble challenges the dozens of other characters for which the Studios allege no protectable traits or only generic traits or conclusory labels.

The Studios concede that no character satisfies the "story being told" test. Mot. 10; Opp. 3-5.  The only question is whether the Studios plausibly allege all three elements of *Towle*'s "especially distinctive" standard: (1) physical and conceptual qualities, (2) sufficient delineation showing consistent, identifiable traits, and (3) "some unique elements of expression."  *Daniels v. Walt Disney Co.*, 958 F.3d 767, 771 (9th Cir. 2020) (affirming dismissal where plaintiff failed to allege "consistent, identifiable character traits and attributes").  For at least 41 of the characters, the Studios have satisfied none:

- Nineteen characters have no alleged traits.  Compl. ¶¶ 53 (Marge, Lisa, Maggie), 124 (Mandalorian, Grogu), 133 (WALL-E), 134 (Sulley, Mike Wazowski), 137 (Flounder), 138 (Simba, Nala), 139 (Moana), 154 (Donkey, Princess Fiona), 169 (Black Panther, Thanos), 170 (Rocket Raccoon), 171-72 (Supergirl), 185 (Gru).
- Twelve characters have no alleged physical traits.  Compl. ¶¶ 44 (Chewbacca), 51 (Deadpool, Groot, Wolverine, Captain America), 61 (Lilo, Olaf, Ariel, Jasmine, Aladdin, Mulan, Snow White).
- Two characters have no alleged conceptual traits.  Compl. ¶ 76 (Daffy Duck, Tweety).
- Two characters are described only by plot function, not protectable traits.  Compl. ¶¶ 69 (Joker), 102 (Toothless).
- Six characters are alleged only as stock archetypes, not unique expression.  Compl. ¶¶ 43 (Stormtroopers, Clone Troopers), 57 (Lightning McQueen), 79 (Tom and Jerry), 102 (Hiccup).

The Studios argue that they need not allege an "extensive and exhaustive list of traits" and that copyrightability can be deferred until summary judgment.  Opp. 4-5.  But the Studios' cited cases still require pleading facts to satisfy each *Towle*

element.  *See id.* (citing *Biani v. Showtime Networks, Inc.*, 2024 WL 6836918, at *4 (C.D. Cal. Mar. 29, 2024); *Summit Kaiju LLC v. Legend Pictures, LLC*, 2022 WL 2235460, at *3-4 (C.D. Cal. Apr. 12, 2022)).  And *Daniels* resolved copyrightability at the pleading stage, affirming dismissal where, as here, the allegations failed *Towle*'s second and third prongs.  958 F.3d at 773.

### B.   The Studios Still Do Not Link Registrations To Character Traits.

The Studios do not address the registration gap that Nanonoble identified.  Mot. 7-8; Opp. 6.  They do not identify where each character first appeared.  They do not identify which registrations cover which character traits.  They claim that their character lists are "non-exhaustive" and "representative" (Compl. ¶ 217) and attach hundreds of registrations—mostly for sequels—without linking any registration to any of the characters.

That vagueness lets the Studios avoid the copyrightability analysis and treat each sequel registration as a separate "infringed work" for statutory damages.  But derivative-work registrations do not cover "preexisting material employed in the work."  17 U.S.C. § 103(b).  Characters first expressed in earlier works are excluded from later registrations.  *Siegel v. Warner Bros. Ent. Inc.*, 690 F. Supp. 2d 1048, 1059 (C.D. Cal. 2009) (holding that "characters which appear throughout [a] series are a part of the underlying [initial] work upon which the later works are based").

The Studios ignore this point.  Mot. 7-8; Opp. 6.  Instead, they argue that they need not plead registration details.  Opp. 6.  But Nanonoble has not demanded registration details.  It has asked that the Studios identify which registrations cover which characters or traits.  The Studios also argue that "registration of a work where a character appears is sufficient to show ownership."  Opp. 3, 6 (citing *Summit Kaiju*, 2022 WL 2235460, at *3-4).  But *Summit Kaiju* supports Nanonoble.  The plaintiff there owned a specific character-design registration, alleged traits satisfying each *Towle* prong, and tied its claim to that registration and that defined set of traits.

Case No. 2:25-cv-08768-SB-E
REPLY ISO MOTION TO DISMISS DEFENDANT NANONOBLE PURSUANT TO FED. R. CIV. P. 12(b)(6)

*See Summit Kaiju*, 2022 WL 2235460, at *1, *3-4.  The Studios have done none of this.

## II.    THE DIRECT INFRINGEMENT CLAIM REMAINS DEFICIENT

### A.    The Training Allegations Rest On Speculation.

The Studios try to escape extraterritoriality by blurring training and outputs into a "multi-stage infringement pipeline."  Opp. 7-8.  But the Studios plead these as separate theories implicating different section 106 rights: training concerns reproduction through scraping and model development (Compl. ¶¶ 161-64); outputs concern preparation of derivative works, display, and distribution of generated videos (*id*. ¶¶ 165-68).  The Court can dismiss the training theory without reaching the output theory.  *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 667-70 (9th Cir. 2017) (affirming dismissal of display-right and distribution-right theories at the pleading stage while assessing reproduction-right theory at summary judgment).

Courts do the same for distinct factual predicates within a single claim.  *See, e.g.*, *N.Y. Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283, 328 (S.D.N.Y. 2025) (dismissing AI "abridgment" theory for lack of substantial similarity while preserving "regurgitation" theory within the same section 501 claim); *Concord Music Grp., Inc. v. X Corp.*, 2024 WL 945325, at *6, *8 (M.D. Tenn. Mar. 5, 2024) (dismissing direct and vicarious counts against social media platform while narrowing contributory count to three specific practices).

Every domestic contact that the Studios cite—soliciting U.S. customers through an English-language website, caching video files on Cloudflare servers, marketing through the Apple App Store and Google Play Store, accepting U.S. dollar payments, and advertising to U.S. consumers (Opp. 8-9)—concerns output delivery or marketing, not training.

And every case the Studios cite to avoid extraterritoriality involved a defendant that transmitted or delivered unauthorized copies of copyrighted works to audiences in the U.S.—the domestic act that made foreign conduct actionable.

*Spanski Enters. v. Telewizja Polska, S.A.*, 883 F.3d 904, 916 (D.C. Cir. 2018) (holding that a Polish broadcaster who "direct[ed] infringing performances into the United States from abroad" committed domestic infringement); *Sound N Light Animatronics Co., Ltd. v. Cloud B, Inc.*, 2017 WL 3081685, at *7 (C.D. Cal. Apr. 7, 2017) (finding Copyright Act applied where defendant sold counterfeit products to U.S. consumers); *Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1145-46 (N.D. Cal. 2011) (finding domestic infringement where defendant uploaded copyrighted song to YouTube's California servers); *Crunchyroll, Inc. v. Pledge*, 2014 WL 1347492, at *17 (N.D. Cal. Mar. 31, 2014) (same for copyrighted videos).

The Studios allege no comparable act.  Extending the Copyright Act to foreign training because U.S. users can access the platform online would "destroy the concept of territoriality inherent in the Copyright Act."  *Perfect 10, Inc. v. Yandex N.V.*, 962 F. Supp. 2d 1146, 1153 (N.D. Cal. 2013) (rejecting claim where images resided on foreign servers and plaintiff speculated copies "may very well have been stored" domestically).

The Studios' parent-company theory (Opp. 9) also fails.  Direct copyright infringement requires that the defendant cause the specific infringing act. *Giganews*, 847 F.3d at 666 (holding that "direct infringement requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant").  The Studios allege only that each defendant "directly participates" in an infringement "enterprise," using the collective "MiniMax" label throughout their training allegations without specifying which entity scraped, which trained, or which distributed.  Opp. 9; Compl. ¶¶ 161-68.  Those are conclusory labels, not facts. Neither of the Studios' cases overcomes that deficiency; both required entity-specific allegations of participation.  *See U.S. v. Bestfoods*, 524 U.S. 51, 68 (1998) (holding that the focus "must necessarily be" on "the relationship between [the parent] and the facility itself"); *Facebook Inc. v. Namecheap Inc.*, 2020 WL

REPLY ISO MOTION TO DISMISS DEFENDANT NANONOBLE PURSUANT TO FED. R. CIV. P. 12(b)(6)

6585534, at *6 (D. Ariz. Nov. 10, 2020) (dismissing direct-participant claim for insufficient allegations).

### B.    The Output Allegations Are Neither Actionable Nor Sufficient.

#### 1.    The Studios Do Not Dispute That They Created The Outputs At The Heart of This Case.

The 52 output allegations are not actionable.  Compl. ¶¶ 118-60.  The Studios do not dispute that a copyright owner cannot infringe its own copyright.  Mot. 11; Opp. 10.  They do not allege that any third party submitted the prompts.  Compl. ¶¶ 118-60; Opp. 10.  Nor could they.  The Studios' lawyers did.

The Studios argue that the Court may not consider the Posner Declaration on a Rule 12 motion.  Opp. 10 n.3.  The Court can.  The 52 outputs are the centerpiece of the Complaint and are incorporated by reference.  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (holding that a court may consider on a 12(b)(6) motion documents a complaint "necessarily relies" upon).  But even setting the Declaration aside, the Studios do not deny that platform records trace the outputs to their lawyers.  Posner Decl. ¶¶ 4-5.

The Studios also argue that hiring investigators does not "authorize" infringement.  Opp. 10.  But that's not the issue.  In every case they cite, the defendant distributed infringing copies as ongoing conduct, and the investigator merely documented it.  *Microsoft Corp. v. Rivera*, 2019 WL 1641349, at *1 (C.D. Cal. Apr. 16, 2019) (investigator purchased counterfeit copy from ongoing counterfeit ring); *Ryan v. CARL Corp.*, 23 F. Supp. 2d 1146, 1147 (N.D. Cal. 1998) (investigators ordered unauthorized copies through document-delivery service); *Atlantic Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 978 (D. Ariz. 2008) (investigator downloaded files from publicly shared folder).  None involved the plaintiff's investigator committing the act of infringement being sued upon.

Case No. 2:25-cv-08768-SB-E

REPLY ISO MOTION TO DISMISS DEFENDANT NANONOBLE PURSUANT TO FED. R. CIV. P. 12(b)(6)

## 2.      The Remaining Output Allegations Do Not Plausibly Allege Nanonoble's Volitional Conduct.

To allege volitional conduct, the defendant must have "exercised control" beyond general website operation, "selected" copyrighted material, or "instigated" its copying.  *Giganews*, 847 F.3d at 670.  The relevant question is "who selects the copyrighted content: the defendant or its customers." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731-32 (9th Cir. 2019) (quotation omitted).  Here, the user selects by typing a prompt.  Compl. ¶ 6.  The Studios do not allege that any Nanonoble employee generated any output.  The Studios raise five counterarguments; none cures this deficiency.

*First*, the Studios argue that Nanonoble "selected" copyrighted works by choosing training data and that the model was "trained" on the Studios' works.  Opp. 13, 15.  But volitional conduct turns on content-specific curation, not antecedent platform design.  *VHT*, 918 F.3d at 733, 737 (finding volitional conduct only where Zillow employees "curated, selected, and tagged" specific photos, not where the platform automatically displayed user-uploaded content).  Every tool that enables infringement does so because of its creators' design choices.  *See, e.g.*, *Fox Broad. Co., Inc. v. Dish Network, L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2014) (holding that "the user, not Dish, makes the copy" despite Dish selecting which channels to record and configuring the recording system).  The question is whether Nanonoble made the content-specific decision that caused a copyrighted work to appear in a particular output.  The Studios do not allege that it did.

*Second*, the Studios argue that Nanonoble "instigated" infringement by populating the Explore page with outputs depicting the Studios' characters and promoting its ability to reproduce them.  Opp. 13-14.  But promotion of a platform does not constitute instigation of the content users create on it.  *VHT*, 918 F.3d at 738 (holding that Zillow's "promotion of Digs, including encouraging users to share photos through its site," did not constitute "'instigat[ing]' user copying").

7

Case No. 2:25-cv-08768-SB-E

REPLY ISO MOTION TO DISMISS DEFENDANT NANONOBLE PURSUANT TO FED. R. CIV. P. 12(b)(6)

***Third***, the Studios argue that automated systems can be volitional actors. Opp. 13.  But each case they cite involved a system that made a content-specific decision about particular copyrighted material—selecting one infringing photo from competing submissions, reproducing user-uploaded images on merchandise, or retrieving copyrighted album art without any user request.  *See* Opp. 13 (citing cases).  The Studios do not allege that Hailuo AI does any of these things.

***Fourth***, the Studios argue that Nanonoble violated their distribution rights by "making available" copyrighted content.  Opp. 11.  But the Studios do not allege that the Hailuo AI models or tool distribute copies of the Studios' works.  The Studios allege only that it can produce short videos depicting their characters—and a video depicting a character is not a copy of the work in which that character appears.  Every case the Studios cite involved distribution of actual copies—a library cataloging physical works, a file-sharing network hosting music files, a search engine linking to infringing images, a set-top box preloaded with copyrighted programs for immediate playback.  *See* Opp. 11, 14 (citing cases).  The Studios allege no comparable distribution.

***Fifth***, the Studios invoke the Copyright Office's AI copyrightability report. Opp. 15 n.5.  But that report addresses whether a user exercises enough creative control over AI-generated outputs to qualify as their author for purposes of copyright registration—not whether the platform's operator is liable for infringement.

## III.    THE SECONDARY INFRINGEMENT CLAIM FARES NO BETTER

### A.    The Studios Still Cannot Allege Third-Party Direct Infringement.

The Studios argue that their "detailed" allegations support "a plausible inference that Hailuo AI was in fact generating images and videos featuring Plaintiffs' characters in response to user requests."  Opp. 15-16.  But the Studios point to no third-party conduct beyond the nine social media posts.  Compl. ¶¶ 170-

73, 186-87, 194-99; Posner Decl. ¶ 5.  The remaining allegations concern the 52 outputs that the Studios created.  Compl. ¶¶ 118-60.

Those nine social media posts do not suffice.  The Studios do not allege that the characters depicted in those posts are protectable under *Towle* or covered by the Studios' registrations.  As explained in Section I, the Studios allege no protectable traits for dozens of characters and do not link their registrations to specific characters.  Without that foundation, the nine posts do not establish direct infringement by anyone.

Nor do the nine posts—0.1% of nearly 7,800 posts on Hailuo AI's social media pages (Posner Decl. ¶ 6)—support a plausible inference of widespread infringement.  The Studios' cited cases only underscore the gap.  *See, e.g.*, *N.Y. Times Co.*, 777 F. Supp. 3d at 306-07 (finding third-party infringement plausible where the plaintiffs provided over 100 pages of third-party infringing outputs and alleged "'widely publicized' instances" of third-party infringement); *Advance Local Media LLC v. Cohere Inc.*, 2025 WL 3171892, at *1, *5 (S.D.N.Y. Nov. 13, 2025) (finding allegations sufficient where the plaintiffs provided 75 examples spanning 125 pages and alleged the defendant promoted its tool as a way to "shortcut research and content analysis").

If the Court finds these nine social media posts sufficient to allege third-party infringement, the Studios' secondary liability claims must be limited to those nine instances.  The Studios cannot use nine posts to bootstrap a theory of "massive" infringement encompassing all of the Hailuo AI tool's outputs, especially the 52 outputs that the Studios created.  *Cf.* Compl. ¶ 1.

**B.    The Studios Satisfy Neither Prong Of Vicarious Liability.**

**1.    Neither Filtering Nor Contractual Relationships Establish A Right To Control Infringement.**

The Studios argue that Nanonoble controls infringement because it selects training data, deploys content filters, terminates accounts, and edits prompts through

a Prompt Optimizer.  Opp. 17-18.  But the Studios do not address the threshold issue: vicarious liability requires control over the *direct infringer's* conduct, not antecedent design choices.  *David v. CBS Interactive Inc.*, 2012 WL 12884914, at *2 (C.D. Cal. Jul. 13, 2012) (dismissing vicarious liability claim against website with links to infringing software because the site lacked control over its users' infringement).  If subscribers are the direct infringers, the relevant question is whether Nanonoble can control their prompts—not whether it selected training data.

The Studios' "vending machine" analogy (Opp. 18) does not change this analysis.  The Studios argue that Nanonoble could have excluded copyrighted works from its training data.  Compl. ¶ 234.  But the ability to have made different design choices before training is not "a right and ability" to stop infringement now.  *VHT*, 918 F.3d at 746 (explaining that a failure to change operations "is not the same as declining to exercise a right and ability" to stop infringement (citation omitted)).  The Studios must allege that Nanonoble can identify and stop specific acts of infringement—not that it could have built a different model.  *See, e.g.*, *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262-63 (9th Cir. 1996) (holding that the swap meet operator had "the right to terminate vendors" and "the ability to control the activities of vendors on its premises").  The Studios do not allege that Nanonoble can extract data concerning copyrighted content from the already-trained model.

The Studios' filtering and contractual arguments fail for the same reason.  A platform's ability to filter for non-copyright purposes does not establish "the right to stop direct infringement."  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173-74 (9th Cir. 2007) (holding that Google's ability to block access to third-party websites did not "give Google the right to stop direct infringement by third-party websites").  The Studios cite *Amazon* for the opposite proposition—that Nanonoble's terms-of-service agreements with its users give Nanonoble "the legal right to stop or limit" infringement.  Opp. 17.  *Amazon* rejected that theory.  *See* 508

REPLY ISO MOTION TO DISMISS DEFENDANT NANONOBLE PURSUANT TO FED. R. CIV. P. 12(b)(6)

F.3d at 1173-74.  And the ability to terminate an account after infringement occurs is not the ability to prevent it.  Every website can terminate users.  That does not satisfy the control prong.  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 805-06 (9th Cir. 2007) (holding that credit card companies' "literal power to 'stop or limit' the infringement" by denying services did not establish "sufficient control over the actual infringing activity").

### 2.    Rebranding A Flat Fee As A "Draw" Does Not Create A Direct Financial Benefit.

Nanonoble argued that flat periodic payments do not constitute a direct financial benefit because Hailuo AI charges the same subscription fee regardless of content.  Mot. 17; Compl. ¶¶ 111-14.  The Studios dismiss this as "miss[ing] the point" (Opp. 17), but they ignore *CCBill* (cited at Mot. 17), which held that "receiving a one-time set-up fee and flat, periodic payments for service from a person engaging in infringing activities would not constitute receiving a financial benefit."  *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (citation omitted).  The Studios' "draw" theory does not overcome *CCBill*.  The Studios argue that the draw need not be "substantial" (Opp. 17), but the issue is not size.  The issue is whether any causal link to specific copyrighted content exists.  The financial benefit prong "demands more than evidence that customers were drawn to [the defendant] [for] infringing material in general."  *Giganews*, 847 F.3d at 673 (citation omitted).

The Studios allege no facts establishing that causal link, such as a share of subscribers who generate their characters or that any subscriber would leave absent that capability.  *Cf.* Compl. ¶ 237 (concluding that character generation "is plainly an attraction").  The Studios also argue that marketing copyrighted content proves financial benefit.  Opp. 18 (citing *BMI v. QM Ent.*, 2026 WL 972408, at *5-6 (W.D. Wash. Apr. 10, 2026)).  But *BMI* is distinguishable.  There, the defendant was a bar whose business depended on live music—the very events that constituted the

REPLY ISO MOTION TO DISMISS DEFENDANT NANONOBLE PURSUANT TO FED. R. CIV. P. 12(b)(6)

infringement.  *See BMI*, 2026 WL 972408, at *6.  The infringing activity *was* the draw; the customers came *for* the unauthorized music performances.  Hailuo AI is a general-purpose video generation tool.  Its draw is the ability to create short videos on any subject—not the ability to reproduce copyrighted characters.

### C.    The Studios Fail To Sufficiently Plead Inducement Under *Cox.*

The Studios dismiss the substantial-noninfringing-uses inquiry as "beside the point."  Opp. 19.  That concession forecloses any "tailoring" theory because a service "capable of 'substantial' or 'commercially significant' noninfringing uses" cannot support tailoring-based liability.  *Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959, 967 (2026) (quotation omitted).  The Studios' contributory claim therefore depends on "inducement."  Under *Cox*, inducement requires that the defendant "actively encourage[] infringement through specific acts."  146 S. Ct. at 967.  The Studios do not allege any such act, do not connect any alleged act to third-party infringement, and cannot convert knowledge into intent.

The Studios' promotional allegations do not constitute "specific acts" that "actively encourage" infringement.  The tagline "a Hollywood studio in your pocket" describes the quality of the outputs.  It does not urge anyone to copy copyrighted content.  Compl. ¶ 1.  Nor does the other allegedly copyright-inducing statement, found in a YouTube video that says, "Superheroes will heal your soul."  *Id*. ¶ 169.  These are not akin to the targeting statements at issue in *Grokster*, which told users that, after a court had shut down the Napster piracy site, they could come to defendants' platform to resume downloading copyrighted content for free.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 939 (2005).

Nor did any of the 13 posts (out of nearly 8,000, or 0.17%) "broadcast[] a message designed to stimulate others to commit violations."  *Id*. at 937.  The Studios also point to one Instagram "paid partnership" and one tutorial.  Compl. ¶¶ 170-73 (Opp. 21).  That is not the sustained campaign *Grokster* demands.  There, "nearly 90%" of files were infringing and the business model depended on infringement.

REPLY ISO MOTION TO DISMISS DEFENDANT NANONOBLE PURSUANT TO FED. R. CIV. P. 12(b)(6)

545 U.S. at 922-26.  Each of the Studios' other cited cases involved defendants who directly and repeatedly instructed users to obtain specific copyrighted content.  *See* Opp. 20-21 (citing cases).  There are no comparable allegations here.

Even if the Studios' promotional allegations constitute "specific acts," inducement requires that those acts produced "resulting acts of infringement by third parties."  *Grokster*, 545 U.S. at 936-37.  The 52 outputs are not "resulting acts"—the Studios created them.  Compl. ¶¶ 118-60.  And the Studios do not allege that any of the nine third-party users who posted content ever saw Nanonoble's promotional posts before doing so—much less, that any of the third parties created those outputs as a result of any Nanonoble promotion.  *Id*. ¶¶ 170-73, 186-87, 194-99.  If no one heard the message and no one acted on it, the inducement produced no "resulting acts"; thus, liability is unjustified regardless of what the defendant said.  *See Grokster*, 545 U.S. at 930-31, 936-37 (grounding inducement liability in common-law "rules of fault-based liability" and requiring that alleged inducing conduct must lead to "resulting acts of infringement by third parties" before liability attaches).

The Studios' final argument—that Nanonoble's failure to deploy copyright filters shows inducement (Opp. 21-22)—fails under *Cox*.  The Supreme Court held that a court cannot impose contributory liability "merely based on a failure to take affirmative steps to prevent infringement."  146 S. Ct. at 968 (quoting *Grokster*, 545 U.S. at 939 n.12).  In *Cox*, the defendant received over 163,000 infringement notices and terminated only 32 subscribers, yet the Court found no inducement.  146 S. Ct. at 965-66.  Nanonoble's alleged inaction pales by comparison.

## **CONCLUSION**

The Court should dismiss the Studios' claims with prejudice.

Dated:  May 15, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Robert M. Schwartz
Daniel C. Posner
Aaron Perahia
Moon Hee Lee
Bradley Kahn


By: _____
Robert M. Schwartz
*Attorneys for Defendant Nanonoble*

REPLY ISO MOTION TO DISMISS DEFENDANT NANONOBLE PURSUANT TO FED. R. CIV. P. 12(b)(6)

**CERTIFICATE OF L.R. 11-6.2 COMPLIANCE RE: WORD COUNT**

The undersigned, counsel of record for Defendant Nanonoble, certifies that this brief contains 3,981 words, which complies with the word limit of the Court's September 23, 2025 Standing Order for Civil Cases Assigned to Judge Stanley Blumenfeld, Jr. (Dkt. No. 11).

Dated:  May 15, 2026                    Respectfully submitted,

                                        QUINN EMANUEL URQUHART
                                            & SULLIVAN, LLP
                                          Robert M. Schwartz
                                          Daniel C. Posner
                                          Aaron Perahia
                                          Moon Hee Lee
                                          Bradley Kahn


                                        By: _____
                                            Robert M. Schwartz
                                        *Attorneys for Defendant Nanonoble*

Case No. 2:25-cv-08768-SB-E

REPLY ISO MOTION TO DISMISS DEFENDANT NANONOBLE PURSUANT TO FED. R. CIV. P. 12(b)(6)