UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISNEY ENTERPRISES, INC. et al., <br><br> Plaintiffs, <br><br> v. <br><br> MINIMAX et al., <br><br> Defendants. | Case No. 2:25-cv-08768-SB-E <br><br><br> ORDER DENYING MOTIONS TO DISMISS [DKT. NOS. 34, 35] |

Plaintiffs are a collection of major movie studios that have developed many of the most widely known movies and characters.  Defendants operate Hailuo AI, an artificial intelligence (AI) image and video generating service.  When prompted with the name of one of Plaintiffs' famous characters, Hailuo AI generates a video or image with a near-perfect likeness of the character in the context requested by the prompt.  Plaintiffs allege that Defendants have infringed their copyrights both by training the AI using Plaintiffs' copyrighted works and by encouraging customers to use the AI to produce infringing content.  Defendants move to dismiss the complaint for failure to state a claim, and Defendant Shanghai Xiyu Jizhi Technology Co. Ltd. (SXJT) moves to dismiss for lack of personal jurisdiction.  The Court finds this matter suitable for decision without oral argument and vacates the May 29 motion hearing.  Fed. R. Civ. P. 78; L.R. 7-15.[1] The motions are denied.

I.

Plaintiffs comprise three groups of companies—Disney, Universal, and Warner Bros.[2]—that "are the largest movie studios in the world."  Dkt. No. 1 ¶ 2

---

[1] Defendants' application to divide argument among multiple attorneys (Dkt. No. 56) is therefore denied as moot.

[2] Plaintiffs Disney Enterprises, Inc., Marvel Characters, Inc., MVL Film Finance LLC, Lucasfilm Ltd. LLC, and Twentieth Century Fox Film Corporation are

(compl.).  They allege that many of their most successful movies "are exceptional
– and valuable – because of the larger-than-life characters featured in those
works," whose mere presence "tells a story that was created and developed over
many years by teams of dedicated artists and storytellers."  *Id*.  "Many of
Plaintiffs' memorable characters have become pillars of pop culture with a lasting
impact on generations of audiences and consumers."  *Id*. ¶ 39.  The complaint
identifies numerous examples, including characters from *Star Wars* (e.g., Darth
Vader and Yoda), the Marvel Cinematic Universe (e.g., Iron Man, the Hulk, and
Spider-Man), *The Simpsons* (e.g., Homer and Marge), Pixar's animated movies
(e.g., Buzz Lightyear), classic Disney animated movies (e.g., Princess Elsa, Olaf,
Ariel, and Aladdin), the DC Comics universe (e.g., Superman, Batman, and the
Joker), and countless other animated television shows and movies (e.g., Bugs
Bunny, Tom and Jerry, Scooby Doo, the Powerpuff Girls, the Minions, and Shrek).
*Id*. ¶¶ 40–109.  The complaint includes exhibits documenting hundreds of
copyright registrations for works involving these characters.  Dkt. No. 1-1
(Disney); Dkt. No. 1-2 (Warner Bros.); Dkt. No. 1-3 (Universal).

The complaint names three defendants:  (1) MiniMax, (2) SXJT, "of which
MiniMax is a division or subsidiary, along with their affiliate and/or agent," and
(3) Nanonoble Pte. Ltd., "which operates at the direction and under the control of
MiniMax."  Dkt. No. 1 at 1.  The complaint defines all three defendants
collectively as MiniMax and makes most of its allegations against MiniMax—
apparently referring to all defendants collectively rather than to the first defendant.
*Id*.  After Defendants clarified that MiniMax is not a distinct entity but rather a
name under which SXJT does business, Plaintiffs voluntarily dismissed their
claims against Defendant MiniMax without prejudice.  Dkt. No. 49.

As for the other two defendants, SXJT is a Chinese company headquartered
in Shanghai, and Nanonoble is a Singaporean company headquartered in
Singapore.  Dkt. No. 1 ¶¶ 33–34.  Defendants produce evidence—which the Court
considers only in connection with SXJT's personal-jurisdiction challenge—that
SXJT and Nanonoble are sister entities within the MiniMax Group, with SXJT

---

collectively referred to as Disney.  Plaintiffs Universal City Studios Productions
LLLP and DreamWorks Animation L.L.C. are collectively referred to as
Universal.  Plaintiffs Warner Bros. Entertainment Inc., DC Comics, The Cartoon
Network, Inc., Turner Entertainment Co., and Hanna-Barbera Productions, Inc. are
collectively referred to as Warner Bros.

focusing on research and development in China while Nanonoble operates the Hailuo AI platform in markets outside China.  Dkt. No. 34-2 ¶¶ 4–6.

MiniMax (used collectively in the complaint to refer to Defendants) was founded in 2021 and is valued at $4 billion.  Dkt. No. 1 ¶ 110.  Its Hailuo AI is a commercial service.  *Id*. ¶ 111.  Customers access Hailuo AI by signing up for a subscription on MiniMax's website.  *Id*.  MiniMax offers five levels of paid subscriptions ranging from $9.99 per month to $199.99 per month, with discounts for quarterly or annual subscriptions.  *Id*. ¶¶ 111–12.  Users can also sign up for a free account but need to sign up for a paid subscription once their initial free credits expire (after three days) or are used up.  *Id*. ¶ 113.  Users spend credits to generate images or short videos based on the user's written prompt.  *Id*.  Their videos are publicly displayed on the "Explore" page on MiniMax's website.  *Id*. ¶ 115.

MiniMax markets Hailuo AI as a "Hollywood studio in your pocket."  *Id*. ¶ 1.  MiniMax advertises its ability to create AI-generated videos that use Plaintiffs' characters.  *Id*. ¶ 169.  For example, MiniMax's official YouTube channel promotes a video titled "Hailuo AI | Superheroes will heal your soul" featuring AI-generated images of many of Plaintiffs' superhero characters including Deadpool, Batman, the Joker, Iron Man, Wonder Woman, Thanos, Superman, Groot, Black Panther, Spider-Man, Flash, and Wolverine (as reflected in screenshots reproduced in the complaint).  *Id*.  MiniMax also conducts "paid partnerships" with Instagram users who advertise Hailuo AI's abilities with AI-generated images of Plaintiffs' characters.  *Id*. ¶ 170.  For example, one video advertises that subscribers can "open Hailuo AI" and then "just type what you want" and shows a video of the video generator with "Spider-man and Supergirl kissing in the park" typed into the prompt, followed by the resulting video with the two characters (Disney's Spiderman and Warner Bros.'s Supergirl) kissing.  *Id*. ¶¶ 171–72.  MiniMax has also advertised Hailuo AI through its official accounts on WeChat, TikTok, and Instagram using images of Plaintiffs' characters including Buzz Lightyear, Olaf, Spiderman, the Hulk, the Joker, Batman, Superman, the Minions, Shrek, and others.  *Id*. ¶¶ 174–85.

When prompted with the names of Plaintiffs' characters, Hailuo AI generates extremely close reproductions of the characters.  As just one of dozens of examples in the complaint, when prompted with "R2-D2 and C-3PO walking near a spaceship, movie scene," Hailuo AI produced this image:

3



*Id.* ¶ 121.  For reference, these are Disney's R2-D2 and C-3PO characters in a scene from the *Star Wars* movies:



*Id.*  Plaintiffs allege that "the outputs created by MiniMax are substantially similar reproductions and derivative works of [Plaintiffs'] valuable copyrighted characters," often containing "extensive nuance and detail, background elements, costumes, and accessories beyond what was specified in the prompt."  *Id.* ¶ 160. The complaint alleges that Hailuo AI's ability to reproduce such close copies of Plaintiffs' works demonstrates that MiniMax used Plaintiffs' copyrighted works without permission to train Hailuo AI by, among other things, downloading Plaintiffs' copyrighted content from the internet and other sources and reformatting the content, which necessarily included creating more copies.  *Id.* ¶ 162.

4

On August 27, 2025, Plaintiffs' counsel sent MiniMax a letter documenting its extensive infringement of Plaintiffs' copyrighted works and demanding that it cease. *Id.* ¶ 208. MiniMax did not substantively respond or stop infringing, even though it has the ability to purge its content or restrict the scope of what users are able to create (as it does when it rejects prompts seeking to create videos with violence or nudity). *Id.* ¶¶ 204–07, 209. Plaintiffs then filed this action, alleging claims for direct and secondary copyright infringement. Dkt. No. 1. Defendants move to dismiss. Dkt. Nos. 34, 35.

## II.

SXJT and MiniMax moved to dismiss the claims against them for lack of personal jurisdiction, arguing that MiniMax is not a legal entity and that SXJT lacks minimum contacts with the United States. Dkt. No. 34. Plaintiffs later voluntarily dismissed MiniMax, leaving only SXJT's challenge.

## A.

A plaintiff bears the burden of establishing personal jurisdiction. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). "Where, as here, the defendant's motion [to dismiss] is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (cleaned up). A plaintiff cannot simply rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true, and conflicts in the parties' evidence must be resolved in the plaintiff's favor. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

## B.

Plaintiffs invoke personal jurisdiction under Rule 4(k)(2), which provides that "[f]or a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). Under that rule, personal jurisdiction is proper "when (1) the action arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the court's exercise of jurisdiction comports with due process." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 978 (9th Cir. 2021) (cleaned up). Here, the parties do not dispute the

first two elements; SXJT argues only that the exercise of jurisdiction would not comport with due process because SXJT lacks the requisite minimum contacts.

"For the exercise of personal jurisdiction over a defendant, due process requires that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Ranza*, 793 F.3d at 1068 (cleaned up). The due process analysis under Rule 4(k)(2) "is nearly identical to traditional personal jurisdiction analysis," except that "rather than considering contacts between [the defendant] and the forum state, we consider contacts with the nation as a whole." *Ayla*, 11 F.4th at 979 (quoting *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007)). A defendant's minimum contacts may give rise to general or specific jurisdiction. Here, Plaintiffs assert only specific jurisdiction.

A nonresident defendant has sufficient minimum contacts to warrant the exercise of specific personal jurisdiction only when three requirements are met: (1) the defendant must either purposefully direct its activities toward the forum or purposefully avail itself of the privileges of conducting activities in the forum; (2) the claim must arise out of or relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice (i.e., it must be reasonable). *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). The plaintiff bears the burden of establishing the first two prongs, after which the burden shifts to the defendant to "present a compelling case" that exercising jurisdiction would not be reasonable. *Id.* at 1068–69.

1.

SXJT argues that the complaint fails to allege the first prong—that SXJT directed its activities toward the United States. As SXJT correctly notes, the complaint repeatedly refers to conduct by "MiniMax," without differentiating among the three Defendants. The Court concludes, however, that the Plaintiffs have made a prima facie showing of purposeful direction by SXJT.

In August 2024, SXJT filed a U.S. trademark application with the U.S. Patent and Trademark Office (USPTO) to use the MINIMAX mark in connection with computer software for providing AI services. Dkt. No. 1-5 at 2 of 18. In February 2026, SXJT filed a statement of use with the USPTO for the MINIMAX mark. Dkt. No. 43-2 at 7 of 57; 15 U.S.C. § 1051(d)(1) (requiring applicant to file "a verified statement that the mark is in use in commerce and specifying the date of

6

the applicant's first use of the mark in commerce and those goods or services specified in the notice of allowance on or in connection with which the mark is used in commerce," together with specimens).  That statement, made under penalty of perjury, verified that the mark was in use in connection with online software that employs AI for content creation, processing, and editing of text, speech, audio, and visual content.  Dkt. No. 43-2 at 10–11 of 57.[3]  It attached as a specimen "[s]creenshots of the client's website showing the mark in association with the covered services."  *Id.* at 8 of 57.  The screenshots included the "About MiniMax" page from MiniMax's website, which described "[o]ur proprietary multimodal models" and "our major AI-native projects," including Hailuo AI.  *Id.* at 4 of 57.

SXJT's statement of use with the USPTO verifying that it was using the MINIMAX mark in commerce, including through Hailuo AI, is prima facie evidence that SXJT was operating the Hailuo AI app in the United States.  Arguing otherwise, SXJT produces declaration testimony that it has no presence in the United States and conducts all business operations in China; that it "does not sell, license, distribute, market, advertise, or offer any products or services to consumers or businesses in the U.S."; and that Nanonoble, rather than SXJT, operates the Hailuo AI platform in the United States.  Dkt. No. 34-2 ¶¶ 5–9.  If those assertions are true, Plaintiffs may be unable to demonstrate personal jurisdiction over SXJT.  But at the pleading stage, conflicts of evidence must be resolved in Plaintiffs' favor.  *Schwarzenegger*, 374 F.3d at 800.  On this record, SXJT has not shown that Plaintiffs' evidence—particularly, SXJT's own sworn statements about its use of the MINIMAX mark in commerce in connection with Hailuo AI—is insufficient to raise a fact issue at the pleading stage.[4]

The parties dispute whether filing a trademark application alone is sufficient to constitute purposeful direction.  The Court need not resolve the dispute, however, because its conclusion that Plaintiffs have made a prima facie showing of purposeful direction is not based principally on SXJT's filing of the trademark

---

[3] Plaintiffs' unopposed request for the Court to take judicial notice of the USPTO filings is granted.  Dkt. No. 44.  The request for judicial notice as to other documents, on which the Court does not rely, is denied as moot.

[4] SXJT argues in reply that a statement of use may be based on use by a related company.  15 U.S.C. § 1055.  It is not clear, however, that SXJT's statement of use describing the MiniMax website as "the client's website" and discussing the mark's use in commerce in connection with Hailuo AI referred only to use by other related entities.

application itself, but rather on SXJT's verified statement of use supporting the application, which raises a fact issue as to whether SXJT itself was operating the Hailuo AI application in the United States.  While Defendants dispute SXJT's involvement, they do not dispute that operating Hailuo AI constitutes purposeful direction.  Because the record contains conflicting evidence about whether SXJT operates Hailuo AI, which must be resolved in Plaintiffs' favor, the Court need not consider the parties' arguments about whether other conduct establishes purposeful direction.

2.

In reply, SXJT for the first time addresses the second prong of specific jurisdiction, arguing that Plaintiffs' claims do not arise from or relate to its trademark application, but that Plaintiffs instead "allege that the Hailuo AI tool reproduces copyrighted characters when subscribers submit text prompts."  Dkt. No. 53 at 11.  As discussed, SXJT's statement of use raises a fact issue as to whether SXJT was itself involved in operating Hailuo AI in the United States—the very conduct SXJT concedes is at the heart of the complaint.  Thus, SXJT has not shown that its contacts are unrelated to Plaintiffs' claims.

3.

Because Plaintiffs have made a prima facie showing on the first two prongs, the burden shifts to SXJT to "present a compelling case" that the exercise of personal jurisdiction over it would be unreasonable.  *Axiom Foods*, 874 F.3d at 1068–69.  SXJT made no attempt to satisfy its burden in its motion, instead relying on the argument that Plaintiffs "fail at prong one."  Dkt. No. 34 at 13 of 18.  Plaintiffs relied on that failure in their opposition (Dkt. No. 43 at 17–18), and SXJT's largely conclusory argument in its reply comes too late.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *Loomis v. Slendertone Distrib., Inc.*, 420 F. Supp. 3d 1046, 1071 (S.D. Cal. 2019) (denying Rule 12(b)(2) motion where "Defendant has not directly addressed [the third] prong and thus fails to meet its burden to prove the unreasonableness of jurisdiction").

\*     \*     \*

In sum, the record contains competing evidence that must be resolved in Plaintiffs' favor at this stage.  If, as Defendants insist, SXJT had no involvement in the operation of Hailuo AI in the United States, it may ultimately prevail on its

8

personal-jurisdiction defense.  But it has not established that it is entitled to dismissal on that basis at the pleading stage.

## III.

Nanonoble moves to dismiss Plaintiffs' claims for failure to state a claim. Dkt. No. 35.  SXJT joins the motion in the event it is subject to personal jurisdiction.  Dkt. No. 34 at 3 of 18.  Defendants' arguments do not distinguish among them, and in the absence of a Rule 8 challenge, the Court assumes that the allegations apply equally to Nanonoble and SXJT.

## A.

To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility" if the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  All well-pleaded factual allegations must be accepted as true, but a court need not credit "[t]hreadbare recitals of the elements of a cause of action" or "a legal conclusion couched as a factual allegation." *Id.* (cleaned up).

## B.

In contending that Plaintiffs fail to state a plausible claim, Defendants raise numerous arguments that miss the forest for the trees.  The complaint plainly alleges plausible claims for direct and secondary copyright infringement, and the Court need only address a few of Defendants' arguments.

First, Defendants argue that Plaintiffs have not plausibly alleged ownership of valid, registered copyrights in the characters at issue, independent of the underlying works in which they appear.  "[C]opyright protection extends not only to an original work as a whole, but also to 'sufficiently distinctive' elements, like comic book characters, contained within the work." *DC Comics v. Towle*, 802 F.3d 1012, 1019 (9th Cir. 2015).  Although not every character in a comic book, movie, or television show is entitled to copyright protection, characters that are "especially distinctive"—i.e., that are "sufficiently delineated and display consistent, widely identifiable traits"—are protected. *Id*. (cleaned up).  The complaint identifies dozens of extremely well-known characters that satisfy this standard, along with hundreds of copyrighted works in which they appear.  Some of these characters have previously been found protected by courts. *See* Dkt. No.

42 at 5–6 (collecting cases). Defendants admit in their reply that they "do not challenge those characters" but claim that the complaint does not allege adequate detail for at least 41 other characters. Dkt. No. 55 at 1–2. The Court need not assess each character individually because a single protected character is sufficient to sustain a plausible claim, and Defendants concede that some of the characters are protected. Moreover, the fact that inputting a character's name into Defendants' software with no description results in a near-perfect visual reproduction (as in the example with R2-D2 and C-3PO above) makes it entirely plausible that the characters are distinctive and have widely identifiable traits. Defendants' contrary suggestion is meritless. Nor have Defendants (1) disputed that the characters appear in the listed works or (2) cited any law requiring at the pleading stage more detail than Plaintiffs have provided in their 119-page complaint.

Second, Defendants challenge the adequacy of both theories of direct infringement pleaded in the complaint. *See* Dkt. No. 1 ¶ 219 (alleging that Defendants infringed Plaintiffs' copyrights (1) by developing and training the Hailuo AI service and (2) in the outputs they generate for subscribers). As for the outputs, Plaintiffs plausibly allege that Defendants have used the Hailuo AI application to make unauthorized copies of Plaintiffs' copyrighted characters. Even assuming that, as Defendants argue, the complaint's 52 specific examples showing how Hailuo AI created copies in response to prompts were not themselves acts of infringement because Plaintiffs' counsel were responsible for the prompts, those examples plausibly establish that Hailuo AI readily produces infringing images when prompted. The complaint identifies examples of other infringing reproductions not produced by Plaintiffs' counsel, including images used in Defendants' social media posts.[5] Defendants' argument that Plaintiffs' output theory fails for lack of volitional conduct is also unavailing. The complaint alleges that Defendants trained their AI using Plaintiffs' copyrighted content and then specifically advertised Hailuo AI's ability to reproduce Plaintiffs' characters, using

---

[5] Relying on a declaration of counsel stating that Defendants' social media accounts had approximately 7,863 posts, Defendants argue that the 13 posts identified in the complaint represent less than 0.17% of Hailuo AI's social media output. Dkt. No. 35 at 12. Defendants' reliance on evidence outside the pleadings is improper on a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Even if the declaration could be considered, Plaintiffs' selection of 13 examples of infringement cannot be construed as a representation that none of the thousands of other posts by Defendants depict Plaintiffs' characters.

images of those characters.  This alleged volitional conduct goes beyond merely operating a website on which users are able to independently upload infringing content.  At the pleading stage, Plaintiffs have plausibly alleged direct infringement.[6]

Third, Defendants argue that Plaintiffs have not plausibly alleged secondary infringement based on either vicarious or contributory liability.  Under the latter theory, a person "who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement" is liable for resulting infringement by third parties.  *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919 (2005).  The complaint alleges that Defendants market Hailuo AI as a "Hollywood studio in your pocket," advertise with Hailuo AI-generated videos featuring Plaintiffs' protected characters, and sponsor instructional videos showing how to create infringing content on Hailuo AI by using the prompt "Spider-man and Supergirl kissing in the park" to generate a video depicting those two protected characters. Dkt. No. 1 ¶¶ 1, 169, 171–72.  The complaint also includes examples of allegedly infringing videos produced by customers and featured on Defendants' website.  At the pleading stage, these allegations are sufficient to plausibly allege contributory infringement based on Defendants' affirmative steps to induce infringement.[7]

The extensive examples contained in the complaint are not alleged to be the only instances of infringement by Hailuo AI, as Defendants seem to suggest.  Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," not an exhaustive recitation of every infringing act.  Fed. R. Civ. P. 8(a)(2); *YellowCake, Inc. v. DashGo, Inc.*, No. 1:21-CV-0803, 2022 WL 172934, at *8 (E.D. Cal. Jan. 19, 2022) ("[T]o plausibly plead contributory copyright infringement, [plaintiff] need not identify every instance of contributory infringement but must allege representative examples of how each Defendant

---

[6] The Court therefore need not reach Defendants' argument that the part of the direct infringement claim based on the training of Hailuo AI is subject to dismissal based on extraterritoriality.  *See Franklin v. Midwest Recovery Sys., LLC*, No. 8:18-CV-02085-JLS, 2020 WL 3213676, at *1 (C.D. Cal. Mar. 9, 2020) (explaining that Rule 12(b)(6) "does not provide a mechanism for dismissing only a portion of a claim") (collecting cases).

[7] Because Rule 12(b)(6) does not permit dismissal of part of a claim, the Court need not decide whether the vicarious infringement theory is also plausibly alleged.  *Franklin*, 2020 WL 3213676, at *1.

either materially contributed to direct infringement by another or induced the infringement by another."); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001) ("Requiring a statement of each and every example [of copyright infringement] would defeat the regime established by Rule 8."). Plaintiffs' complaint gives Defendants more than adequate notice of the basis of Plaintiffs' claims and plausibly alleges widespread, intentional acts of direct and secondary infringement. Defendants have not shown that they are entitled to dismissal of either of Plaintiffs' claims.

IV.

Defendants' motions to dismiss the complaint for lack of personal jurisdiction and failure to state a claim are denied. Defendants shall file their answer(s) no later than June 5, 2026.

Date: May 22, 2026

_____
Stanley Blumenfeld, Jr.
United States District Judge

12