QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert M. Schwartz (Bar No. 117166)
robertschwartz@quinnemanuel.com
Daniel C. Posner (Bar No. 232009)
danposner@quinnemanuel.com
Haiyan Tang (Bar No. 255931)
haiyantang@quinnemanuel.com
Aaron Perahia (Bar No. 304554)
aaronperahia@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Defendant and Counterclaimant Nanonoble Pte. Ltd. and Defendant Shanghai Xiyu Jizhi Technology Co. Ltd.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| DISNEY ENTERPRISES, INC., *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>SHANGHAI XIYU JIZHI TECHNOLOGY CO. LTD., a Chinese limited company; and NANONOBLE PTE. LTD., a Singaporean private limited company,<br><br>Defendants. | Case No. 2:25-cv-08768-SB-E<br><br>**DECLARATION OF DUAN ZHICHAO IN SUPPORT OF JOINT MOTION FOR EXTENSION OF CASE SCHEDULE**<br><br>The Hon. Stanley Blumenfeld, Jr.<br><br>Complaint Filed: September 16, 2025<br>Trial Date: July 12, 2027 |
| AND RELATED COUNTERCLAIMS. | |

**DECLARATION OF DUAN ZHICHAO**

I, Duan Zhichao, declare as follows:

1. I am over 18 years of age. I submit this declaration in support of the Joint Notice of Motion and Motion for Extension of Case Schedule. Defendants in this action are Shanghai Xiyu Jizhi Technology Co. Ltd. ("SXJT"), a People's Republic of China ("PRC") company, and Nanonoble Pte. Ltd. ("Nanonoble"), a Singaporean company. I have personal knowledge of the facts stated in this declaration and could testify to them if called as a witness.

2. I am an attorney at law duly licensed to practice in the PRC. I am also a licensed Patent Agent in the PRC. I earned a Bachelor of Engineering degree from the Southeast University of China, a Ph.D. in Engineering from the University of Southern California, and an LL.M. from Peking University.

3. I am currently a Senior Partner at Han Kun Law Offices' Beijing office with practice areas focused on data protection and compliance under PRC law. I have led dozens of significant PRC cybersecurity review applications and cross-border data compliance projects. My clients include major China-based AI model developers, cloud computing companies, and internet and technology enterprises.

4. I began assisting with this matter in May 2026. My work includes evaluating the PRC legal requirements governing the disclosure of information requested in this litigation, advising SXJT on the government approval process, and helping prepare its submissions to PRC authorities. In that work, I have reviewed Plaintiffs' discovery requests, information concerning the categories and locations of responsive technical materials, relevant PRC statutes and regulations, records of communications with PRC authorities, and the application materials that SXJT prepared for submission to those authorities.

**Multiple PRC Laws and Regulations Directly Govern Data Export**

5. The PRC Data Security Law (中华人民共和国数据安全法, hereinafter the "DSL"), enacted in 2021, sets the general legal framework for data

security in the PRC. Article 36 of the DSL provides that, absent approval by a competent PRC authority, "a domestic organization or individual shall not provide data stored in the territory of the PRC to any foreign judicial or law enforcement authority."

6. Other PRC laws and regulations further restrict the handling and outbound transfer of particular categories of data. These requirements vary with the nature and content of the data. The laws and regulations on state secrets bear most directly on the source code of advanced AI models.

7. The PRC Law on Guarding State Secrets (中华人民共和国保守国家秘密法, hereinafter the "State Secrets Law") strictly limits the outbound transfer of state secrets, which are broadly defined to include "matters related to national security and interests." Under Article 5 of the State Secrets Law, "enterprises … and other social organizations and citizens have the obligation to guard state secrets," and "any conduct endangering the security of state secrets must be subject to legal liability." Article 111 of the PRC Criminal Law (中华人民共和国刑法) and Article 77 of the PRC National Security Law (中华人民共和国国家安全法) reinforce this requirement.

8. Violating these requirements can cause serious legal consequences, from warnings and substantial fines to suspension of business operations, revocation of business licenses, and criminal liability. Responsible individuals may also face personal penalties, including fines and imprisonment.

**SXJT's Efforts to Obtain Government Approval**

9. The Plaintiffs' Requests for Production sought, among other things, source code used to collect training materials, train AI models, and control the images and videos they generate, as well as business records, communications, and other technical documents currently stored in the PRC. As a PRC company, SXJT is a "domestic organization" that must obtain approval under Article 36 of the DSL in order to comply with the Requests for Production.

10. Obtaining an approval under Article 36 of the DSL is complex in practice. Article 36 of the DSL does not expressly identify a single authority responsible for reviewing applications of this kind or prescribe a uniform submission procedure. Depending on the nature of the data and the circumstances of the case, the reviewing authorities may include the Ministry of Justice, the Cyberspace Administration of China, the Ministry of Public Security, and the Supreme People's Court. These authorities may also consult one another during the review.

11. Because the appropriate authority and submission procedures may differ from case to case, an applicant may need to consult the relevant authorities first to determine where and how to submit an application, and what information to include. I understand that SXJT began consulting with PRC government authorities in May 2026, shortly after Plaintiffs served their first Requests for Production. SXJT's consultations concerned the proposed disclosure of documents in this litigation to the Plaintiffs, their attorneys, and potentially to the Court.

12. Over the following months, SXJT consulted with relevant PRC authorities while the parties continued discussing the scope of Plaintiffs' discovery requests. Through these communications, SXJT confirmed that it should submit an application to the Ministry of Justice's Bureau of Foreign-Related Legal Affairs (司法部涉外法治工作局, hereinafter the "Bureau") and received guidance on the submission procedures.

13. Following a period of regular communications with the Bureau, SXJT initiated the process of filing its formal application on October 23, 2026, by contacting the Bureau regarding the submission of its formal application. On October 30, 2026, SXJT's representative met in person with Bureau officials, who gave further instructions on the application. On November 10, 2026, based on those instructions, SXJT's representative submitted a formal application package to the Bureau in person. The revised application identifies the seven source-code requests,

cites the relevant PRC legal requirements, explains the status of this litigation, and requests a written review opinion. It also provides supporting documents, including the Complaint, the Answer, and the Court's Case Management Order. I assisted SXJT with the preparation of its formal application package.

14. SXJT's application asks the Bureau to review the proposed disclosure of source code and related technical materials used to collect and process training data, train AI models, and control the content they generate, and to issue a written opinion. I understand that other responsive materials, including business records, contracts, marketing materials, communications, and technical documents unrelated to the sought source code fall outside the scope of this application. SXJT is separately collecting and reviewing those materials and producing those it can lawfully disclose without the approval sought in its application.

15. In my experience, the authorities review applications of this nature on a case-by-case basis. The reviewing authorities may request further information or consult other government agencies, and there is no statutory deadline for such review. The review process may take several months, depending on the nature and sensitivity of the data and the complexity of the application. The reviewing authorities may deny the application without giving detailed reasons, or may never issue a formal written decision.

16. As of today, neither SXJT nor I have received any further communications regarding the application. SXJT and I will respond promptly to any inquiries from the Bureau and continue to follow up on the status of the application.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 22, 2026, in Beijing, People's Republic of China.

Duan

Duan Zhichao